MICHAEL GILMAN, as Administrator, etc., Respondent, v. HENRY McARDLE, Appellant.

A trust of personalty is not within the statute of uses and trusts, and may be created for any purpose not forbidden by law ; it may be created without writing, and the delivery of the property is sufficient to pass the title.

M., an aged married woman, having no kindred living, placed in the custody of defendant a sum of money with directions to use the same for the support and maintenance of herself and husband during their lives ; after the death of the survivor of them, to use the residue to pay their respective funeral expenses, and for the erection of a suitable monument to their memories, and to expend any residue for masses, for the repose of their souls according to the ritual of the Roman Catholic church, of which church M. and her husband were members. Defendant received the money upon the conditions stated, and promised to apply it in accordance therewith. Defendant was an undertaker; M. selected the kind of coffin, and described the monument she desired, and specified

the time the masses were to be solemnized. She died first, then her husband, both intestate. Defendant expended a portion of the fund for the purposes specified, leaving a balance to be expended for masses. In an action by the administrator of the husband's estate to recover such balance, *held,* that a trust, valid as between the parties, was created to provide for the support of M. and her husband, which placed the fund beyond their control, and vested the title in the trustee, and so long as the husband lived he had no title to any part of it ; that as to the surplus, without considering the question whether a valid trust was created in regard thereto (as to which *quære*), a valid contract was entered into; and, except in case of a breach thereof, plaintiff had no right of action. As to whether in any event plaintiff as representative of the husband could have a right of action *quære.*

It is only in respect to dispositions of property which are not to have any effect except upon the death of the owner, and are revocable, that he is confined to a will. If they operate *in presenti* they may be valid as contracts, although they are not to be carried into execution until after the death of the party making them, or are contingent upon the survivorship of another.

*It seems* that any trust of property which would be valid if created by will, can be created by the owner in his life-time, provided it is then to go into operation, although to be executed after his death ; and, in case of personal property, may be created by oral agreement, accompanied by delivery of the property.

*Gilman* v. *McArdle* (17 J. & S. 463), reversed.

(Argued March 19, 1884; decided October 6, 1885.)

APPEAL from judgment of the General Term of the Superior Court of the city of New York, entered upon an order made November 16, 1883, which affirmed a judgment in favor of plaintiff, entered upon a decision of the court on trial at Special Term. (Reported below, 17 J. & S. 463.)

The nature of the action and the material facts are stated in the opinion.

*Richard L. Sweezy* for appellant. The subject-matter of the trust being personal property, the trust need not necessarily be declared in writing. Actual delivery of the property to the trustee, accompanied by oral directions and limitations as to the trust, uses and purposes, is sufficient to vest the title to the fund in the trustee. (*Martin* v. *Funk*, 75 N. Y. 134 ; *Kehoe* v. *Kehoe*, 12 Abb. N. C. 427 ; Perry on Trusts, § 86 ;

*Young* v. *Young*, 80 N. Y. 422; *Willis* v. *Smyth*, 91 id. 297; *Williams* v. *Fitch*, 18 id. 548.) A trust of personalty is not within our statute of uses and trusts, and may be created for any purpose, private, charitable or religious, not contrary to public policy or public morality. (*Bucklin* v. *Bucklin*, 1 Keyes, 141; *Gott* v. *Cook*, 7 Paige, 534; *Perry* v. *Foster*, 62 How. Pr. 228.) The English doctrine of superstitious uses has never been adopted by our courts and is inconsistent with the spirit of our institutions. (*Matter of Hagenmeyer*, 12 Abb. N. C. 432; *Kehoe* v. *Kehoe*, id. 427; Perry on Trusts, § 715.) By delivery of the fund to defendant as aforesaid with intent to impose a trust thereon, Mrs. Gilman effectually created a valid trust for a pious or religious use. (*Schouler* v. *Williams*, 16 Rep. 79; 28 Alb. L. J. 63; 134 Mass. 426; Perry on Trusts, § 715.) The saying of masses being a religious service of the Catholic church, money given for the support of such services is devoted to a religious and not a mere personal or private use. (*Schouler* v. *Williams*, *supra*.) The rule that there must be a definite beneficiary or *cestui que trust* ascertained or ascertainable, under the provisions of the trust, capable of coming into court and compelling the execution of the trust in his favor, is applicable only to personal or private, and not to religious or charitable trusts. (*Owens* v. *Missionary Soc.*, 14 N. Y. 380; *Beekman* v. *Bonsor*, 23 id. 298; *Holmes* v. *Mead*, 52 id. 344; *Goddard* v. *Pomeroy*, 36 Barb. 546; *Lowers* v. *Cyrenius*, 39 Ohio St. 426.) The trust is not void for uncertainty or indefiniteness. (*Power* v. *Cassidy*, 79 N. Y. 602.)

*William M. Snyder* for respondent. There was a mere naked deposit of money in the hands of McArdle, the defendant, which created only a parol agency, coupled with no interest. This agency was revocable at the mere pleasure of the donor, and upon her death ceased by operation of law. (Story on Agency, §§ 463, 488; *Houghtaling* v. *Marvin*, 7 Barb. 412; *Martin* v. *Inter. L. Ins. Co.*, 53 N. Y. 339; *Helmer* v. *St. John*, 8 Hun, 166.) No title having vested in the defend-

ant, McArdle, by the deposit in his hands, the fund upon the death of the donor vested absolutely in her legal representative by operation of law. (*Rosevelt* v. *Elkthorp*, 10 Paige, 415; *Lockwood* v. *Stockholm*, 11 id. 87; *Barnes* v. *Underwood*, 47 N. Y. 351; *Elliot* v. *Collier*, 1 Wilson, 169; *Squib* v. *Wyn*, 1 P. Wms. 382; Story on Eq., §§ 1156, 1196a.) As against the legal representatives of the donor, there must be some written evidence as to the conditions upon which the defendant received this fund, in order to establish a private trust. In the absence of any writing to sustain it, the so-called trust fails, and the defendant must account. (Perry on Trusts, § 86; *Day* v. *Roth*, 18 N. Y. 448; *Martin* v. *Funk*, 75 id. 134; Code of Civ. Pro., § 829; *O'Hara* v. *Dudley*, 64 How. Pr. 340.) The absence of a beneficiary renders the so-called trust absolutely void. No title ever vested, hence no trust was ever created. (*Bascom* v. *Albertson*, 34 N. Y. 584; *Dowing* v. *Marshall*, 23 id. 366; *Fontain* v. *Ravenal*, 17 How. [U. S.] 369; *Goddard* v. *Pomeroy*, 36 Barb. 564; *White* v. *Howard*, 46 N. Y. 114; Hill. on Trustees, 52; *Leggett* v. *Dubois*, 5 Paige, 144; Lewin on Trusts, 55, 305; *Smith* v. *Bolden*, 23 Beav. 262; *Trotter* v. *Blocker*, 6 Porter [Ala.], 269; 1 Perry on Trusts, § 60; *Baptist Assn.* v. *Hart*, 4 Wheat. 1; Story on Equity, §§ 1196 and 1196a; *Rodgers L. W.* v. *Kelly*, 88 N. Y. 234; *Lawrence* v. *Fox*, 20 id. 268; *Barr* v. *Beers*, 24 id. 178; *Torp* v. *Coal Co.*, 48 id. 253; Bouv. L. Dict., "Trusts.") The purposes expressed by the donor did not create a charity, because (1) a charity can only be created by deed or by will; (2) a charity must operate for the public benefit; (3) a charity must have for its object the welfare of living persons. (*Vidal* v. *Girard*, 2 How. [U. S.] 128; *Price* v. *Maxwell*, 28 Penn. St. 35; *Perin* v. *Carey*, 24 How. [U. S.] 506; *Jackson* v. *Phillips*, 14 Allen, 539; *Att'y-Gen'l* v. *Mayor, etc.*, 1 Bligh, 312; Story on Equity, §§ 1155, 1164; *Nash* v. *Morely*, 5 Beav. 177; *Hoare* v. *Osborne*, L. R., 1 Eq. Cas. 586; *Richard* v. *Robson*, 31 Beav. 244; *Thornton* v. *Howe*, id. 14.) The purposes expressed by the donor did not create a "pious use," because the benefit to be

derived was not to be enjoyed by any living person, and was not created either by will or by deed. (*Tucker* v. *St. C. Church*, 3 Sandf. 242 ; *Robertson* v. *Bullions*, 11 N. Y. 243 ; *Jackson* v. *Phillips*, 14 Allen, 539 ; *Yeap* v. *Ong*, 6 Privy C. Cas. 381 ; *Wright* v. *M. E. Church*, Hoff. Ch. 202 ; *White* v. *Howard*, 46 N. Y. 144 ; *Shortwell* v. *Mott*, 2 Sandf. Ch. 46.)

RAPALLO, J. This action is brought by the administrator of James Gilman, deceased, to recover of the defendant certain money which had been placed in his hands by Margaret Gilman, the wife of said James Gilman, a few days before her death. James Gilman survived his wife but a short time. Both died intestate, and the plaintiff, a half nephew of James, took out letters of administration upon his estate. No administration appears to have been granted upon the estate of Margaret Gilman.

The facts of the case are uncontroverted. Only one witness was examined on the trial, and that witness was the defendant.

From his testimony it appears that Margaret Gilman, prior to her death, had money in savings banks. She was about eighty-five years old, and her husband was upwards of ninety years of age. They had no descendants, and she supposed or stated to the witness that she had no next of kin and that her husband had no relatives except a brother who was in a monastery, or some other religious establishment, in Ireland. The defendant was an intimate friend of both, of thirty years' standing. Both were Roman Catholics.

Margaret had several conversations with the defendant in respect to the money which she had in the savings banks. She expressed the desire to get her money out of the banks so that the lawyers would not get hold of it. About a week before her death she sent for the defendant and delivered to him her bank-books, and instructed him to draw the money out of the banks and apply it to certain purposes. He drew the money during her life-time on her written orders. The finding of the trial judge is, that on or about the 23d of August, 1882, said Margaret Gilman placed in the custody of the defendant Henry

McArdle, about $2,299, and directed said McArdle to use said money for the support and maintenance of herself and her said husband as long as they lived, and after the death of the survivor of them, to use the residue of said money to pay their respective funeral expenses, and pay for the erection of a suitable monument to their memories, and to expend the amount remaining in his hands, after such payments, for Roman Catholic masses, to be procured by him to be said for the repose of the souls of herself and her said husband; that the defendant received the said sum of money upon the terms and condition stated above, and promised to apply it to the uses and purposes therein mentioned.

Margaret died on or about September 1, 1882, and her husband died on or about October 13, 1882.

The defendant, after receiving the fund, expended a portion of it for the purposes directed, and there is a balance remaining in his hands, for which he is directed, by the judgment appealed from, to account to the plaintiff.

The plaintiff claims in the first place that the transaction, as found, created a mere agency, revocable at the pleasure of Mrs. Gilman; that no title to the fund passed to the defendant, and consequently the agency was revoked by her death, and the title to the fund vested absolutely in her husband as her legal representative. This view was sustained by the court below, and was one of the grounds upon which its judgment was placed.

We cannot concur in the proposition that a mere agency was established. Passing for a moment the questions which arise upon the undertaking of the defendant as to the application of the surplus which might remain after paying for the support of Mrs. Gilman and her husband during their lives, we think that a valid trust was created to provide for such support, which trust placed the fund beyond the control of Mrs. Gilman and vested the title to it in the defendant as trustee. A trust of personalty is not within the statute of uses and trusts, and may be created for any purpose not forbidden by law. Such a trust may be created without writing, and the delivery

of the property is sufficient to pass the title. (Perry on Trusts 586; *Day* v. *Roth*, 18 N. Y. 448.) The trust may be for the support of the person who creates it, and is valid except as to creditors. The statute of frauds (2 R. S. 135, § 1) provides that "all transfers or assignments, verbal or written, of goods, chattels or things in action, made in trust for the use of the person making the same, shall be void as against the creditors, existing or subsequent, of such person," clearly implying that they are valid as between the parties. In this case the trust was not merely for the support of Mrs. Gilman, but for that of her husband during his life, and was one which he could have enforced. In *Stone* v. *Hackett* (12 Gray, 227), it was held that the delivery, without consideration, of certificates of shares in a corporation with blank powers to transfer indorsed, in trust to pay the income to the settlor during his life, and at his death to transfer the shares to certain charitable objects, was valid and vested the title to the shares in the trustee, even as against the widow of the settlor, and this, notwithstanding that a power was reserved to the settlor to modify the uses or revoke the trust. It was there held that the delivery of the certificates with assignments of some of them, and powers of attorney to transfer others, was equivalent to a completed transfer, and passed the title to the trustee, and that the reservation of a power to revoke the trust was immaterial, a power of revocation being perfectly consistent with a valid trust. In the present case the delivery of the money was complete, and there was not even a power of revocation reserved. In *Davis* v. *Ney* (125 Mass. 590) a depositor in a savings bank delivered her bank-book, accompanied by an assignment of her deposit, to B. upon an oral agreement that B. should draw for her what money she wanted during her life-time and pay the balance, if any, left at her death, to her son, and this was held to be a valid trust.

In this case, at the time of the death of Mrs. Gilman, the title to the fund, or so much of it as had not then been applied, was in the defendant, as trustee, upon a valid trust for the support of her husband so long as he should live. If he had

lived long enough this trust might have consumed the whole of the fund, which was not large, and nothing passed to the husband or representatives of Mrs. Gilman, unless it be the contingent right to the surplus, if any should happen to remain after the death of Mr. Gilman, and if it should be held that no valid disposition had been made by Mrs. Gilman of this surplus. So long as he lived he had no legal title to any part of the fund.

The defendant, in pursuance of his promise and undertaking, did apply a portion of the fund remaining, to the funeral expenses and monument, as directed by Mrs. Gilman, and no question is made, in this case, as to those expenditures, but the plaintiff seeks to recover the balance, which according to the directions of Mrs. Gilman, which defendant agreed to carry out, was to be devoted to procuring masses.

The court below held, as to this surplus that the defendant held it as a mere agent whose authority was revocable, and also that no valid trust had been created; that there was nothing illegal or contrary to public policy in the purpose to which the defendant had undertaken to devote it, but that as a trust it was void for want of a beneficiary who could enforce it, both of the persons, for whose benefit the masses were to be solemnized, being dead.

The conclusion of the learned court that a valid trust was not established in respect to the surplus admits of much discussion, and we do not propose now to decide that question. It is said, by the learned annotator of the 11th edition of Kent's Commentaries (vol. 4, p. 305, note 2), that the essential requisites of a valid trust are, first, a sufficient expression of an intention to create a trust, and second, a beneficiary who is ascertained, or capable of being ascertained; and that outside of the domain of charitable uses, no definiteness of purpose will sustain a trust if there be no ascertained beneficiary who has a right to enforce it. And in the case of *Beekman* v. *Bonsor*, the same learned jurist, in delivering the opinion of this court, says: " A gift to *charity* is maintainable in this State if made to a competent trustee, and if so defined that it can be executed *as*

*made by the donor,* by a judicial decree, *although it may be void according to general rules of law for want of an ascertained beneficiary."* (*Beekman* v. *Bonsor,* 23 N. Y. 298, COMSTOCK, J., at p. 310.)

Whether the doctrine above enunciated has in this State undergone any change, or whether the disposition made by Mrs. Gilman can, in respect to the surplus in controversy, be construed as a charitable, pious or religious use, and sustained on that ground, are questions upon which we reserve our opinion.

The learned judge who rendered the judgment in the present case expressed the opinion that the disposition in question would have created a valid trust if contained in a will, though not valid under the circumstances of this case as a disposition *inter vivos,* but it seems to us that any trust of property which would be valid if created by will, can be created by the owner of the property in his life-time, provided it is then to go into operation although it is to be executed after his death, and that in the case of money or personal property, it may be created by oral agreement accompanied by a transfer or delivery of the property, and that such delivery will pass the title to the property, and that as a trust its validity is to be tested by the same rules whether it be created by will or by contract *inter vivos.*

In the *Matter of James Schouler* (134 Mass. 426), a case very similar to this was decided. The deceased by an informal testamentery writing authorized the Rev. T. L. after her death to withdraw from a savings bank the contents of her bankbook and to dispose of them, part for her funeral expenses and the residue for " charitable purposes, masses," etc. The court held that the terms of the bequest clearly manifested the intention to create a trust in the Rev. T. L. and that it was valid ; that masses were religious ceremonials of the church of which she was a member, and came within the religious or pious uses which are upheld as public charities, citing the case of *Jackson* v. *Phillips* (14 Allen, 539, 553). Rev. T. L. having died, the Supreme Court appointed Archbishop Williams trus-

tee in his place, and ordered the administrator *de bonis non* of the deceased to pay the money to him, to be applied according to the directions of the will.

By reference to the case cited it will be seen that in the State of Massachusetts the English doctrines on the subject of charitable uses, and the *cy pres* doctrine, still prevailed, and on that ground the court upheld a trust which by reason of its indefiniteness, if for no other reason, could not be sustained in this State.

But in the case before us even if it should be conceded that the agreement under which the defendant received the money could not be sustained strictly as a trust, on the ground of the want of a beneficiary to enforce it, it would not follow that it was of no effect whatever. As a trust the same objection, if valid, existed to the undertaking to apply the fund to defraying the funeral expenses of the deceased and her husband, and to the erection of a monument to their memories, but it would be a great abridgment of the rights of property, to deny to any person the power, in his life-time, to enter into a contract to be performed after his death by another person, to do or procure to be done any act not objectionable as against any rule of law, morals or public policy, and to pay the consideration for the performance of such contract. It appears in this case that the defendant was an undertaker; that the deceased selected the kind of coffin she desired, and described the monument she wished erected and specified the times at which the masses were to be solemnized, and the finding of the court is, that the defendant received the money on the terms stated by the deceased, and promised to apply it to the uses and purposes therein mentioned. There was no indefiniteness about this contract and it was easy of performance. There certainly can be no legal objection to a person contracting in his life-time for his funeral, his coffin and his monument and even for the solemization of masses, and paying for them in advance, and if so, what reason can there be for denying him the power of paying a sum of money to a third person on his agreement to procure those things. Suppose a person should desire in his life-time to provide for the writing of his biography, the publication of

his literary works, the painting of his portrait, or the erection of a statue to his memory after his death. He certainly can make a valid contract with any person to do either of those things, and pay for them, and although they may be personal to himself and for the gratification of his own feelings and perhaps his vanity, and he cannot, in strictness, create a trust for the purpose, because there will be no beneficiary, as he will not live to enforce it, why should he not be at liberty in his lifetime to contract with some person of his confidence to procure them to be done, and as a consideration for such agreement, to pay him the sum necessary to defray the expense. Such a contract could be enforced by the legal representatives of the promisee, and in case of a refusal to perform they could recover the consideration paid. It certainly must be in the power of a person to provide, either by will or contract, for matters of this description, and I can see no legal reason why he should be confined to a testamentary direction. It is only in respect to dispositions of property which are not to have any effect except upon the death of the owner and are revocable, that he is confined to a will. If they operate *in presenti*, they are valid as contracts, even though they are not to be carried into execution until after the death of the party making them, or may be contingent upon the survivorship of another. (*Matter of Diez*, 50 N. Y. 93.) Even an agreement *inter vivos* that one shall by will bequeath to another a sum of money is valid though the promised bequest cannot take effect until after the death of the promisor.

Where money is paid by A. to B. on the promise of B. to invest or employ it in a specified, definite and lawful manner, a valid contract is made, and I can see no reason why the contract may not be to employ the money, in the specified manner, after the death of A. If there is an ascertained beneficiary interested in the performance of the agreement, he can, after the death of A., enforce it as a trust. If there is no such beneficiary, the right to enforce it as a contract, or in case of refusal to perform, to recover the consideration paid, passes to the legal representatives of A. Of course all this

is subject to the reservation that there is nothing in the contract which violates any law, even the statutes against perpetuities.

In this case the agreement was to expend the surplus, if any should remain after providing for the support of Mrs. Gilman and her husband and their funeral expenses and monument, in procuring certain masses to be solemnized according to the ritual of the Roman Catholic church, of which they were members, a duty quite definite and easy of performance on payment of the customary charges. We concur with the court below in holding that there was nothing illegal in the purpose, nor can any person rightly complain that it involved any injustice. The money was her own. She disregarded no ties of kindred, for she had none, and she undertook to devote her little accumulations to the benefit of herself and her aged husband so long as they might live, and to securing them a becoming burial, to be followed by those religious ceremonies which, according to their belief, were important; but we cannot concur in holding that a mere agency was intended to be created. Such a theory is conclusively refuted by the nature of the contract itself. The title to the money delivered by Mrs. Gilman to the defendant vested in him as trustee under the first trust, for the support of herself and her husband during their lives, which was irrevocable. The undertaking as to the contingent surplus was not to be performed as agent for either of them, for it could not be performed until after their death, when there would be no principal. The intention, manifestly, was that the title to the money should pass to the defendant in consideration of his promise that he would expend an equivalent sum in the designated masses, and this was the substance of the contract.

We are of opinion that this contract was valid, and that the representatives of Mrs. Gilman had no right of action except in case of a breach of the contract by the defendant. Whether the representatives of Mr. Gilman had any right of action in any event is a question not determined in this case. No breach or intended breach being charged, we think the plaintiff estab-

1885.]        PEOPLE, ex rel. McDONALD, v. KEELER.        463

Statement of case.

lished no cause of action and his complaint should have been dismissed.

As the case comes before us on a conceded state of facts and only a question of law is presented, the judgment appealed from should be reversed and the complaint dismissed, with costs.

All concur, except ANDREWS and FINCH, JJ., dissenting; EARL, J., concurring on the ground that there was a valid trust.

Judgment accordingly.