Barker, J.
The plaintiff, on presenting the draft and *359 proving its nonpayment, made out a prima facie case for the verdict rendered by the jury. The defendants Sigmund and Maurice Stettheimer, did" not appear in the action, and both suffered a default. The defendants, Theodore W. and Bernard W. Tone, who appeared and answered, resisted a recovery on the draft on the ground, among others, that their co-defendant and late partner, Sigmund Stettheimer, was in fact the owner of the draft, and that the plaintiff had no title thereto; that as the action was founded on the ■draft, Sigmund Stettheimer could not maintain a suit thereon, as he was one of the makers, and also one of the defendants.
In an action at law a party cannot sue himself, and if the fact is as claimed by the defendants, the objection defeats a recovery on the draft in this action. The plaintiff bases his claim of title to the draft on the following facts and circumstances, which the evidence tended to establish: Sigmund Stettheimer supplied all the capital, §50,000, on which the firm did business, as stipulated in the articles of co-partnership, which was to be repaid to him at the end of the term. The other members did not contribute any capital, but had the charge and management of the business. Each member of the firm kept an individual account with the bank, making deposits of cash items and drawing out the same from time to time on their individual checks. On the day the draft bears date, there was a balance standing to the credit of Sigmund in his individual account for more than §10,000, which was made up of cash items deposited shortly before that date. At the close of the business on that day it was ascertained that the firm was insolvent and would not be able to open the bank for business the next day, and Sigmund was informed of the situation on the evening of that day. At that time Sigmund was indebted to his brother Joseph, who resided in Germany, in the sum of §7,500, and was also indebted to other parties, but their names and the amount of their indebtedness does not appear. The plaintiff and the defendant Maurice are sons of Sigmund Stettheimer. Duritig the evening of the 12th, Sigmund Stettheimer drew Ms individual check on his private account, payable te the order of the plaintiff, for the sum of §10,000, and delivered it to the plaintiff with directions to pay his brother Joseph §7,500, the amount which he owed him, and also his other individual creditors.
The evidence also tended to show that this, check was drawn with the knowledge of the other partners, and it was arranged that the same should be paid that evening out of the cash items then in hand and the check charged up to the individual account of Sigmund. All of the defendants except Sigmund were at the bank during the mght of the *360 twelfth arranging the affairs of the bank and preparing a general assignment for the benefit of their creditors, which was executed before business hours the next morning. The plaintiff presented the check that evening at the bank and those in charge of the fund offered to pay the plaintiff the amount of the check in currency, of which there was an amount on hand sufficient for that purpose, but the plaintiff declined to receive it, stating to them that he preferred a draft on New York, and the one in suit was then drawn and delivered and the check handed in and placed in the drawer where other checks of a like character were kept by the officers of the bank. The plaintiff immediately on receiving the draft endorsed the same and inclosed it in a letter and forwarded the same to his correspondent for collection. The bank did not open its doors the next day, and the general assignment was executed for the benefit of the creditors of the firm.
If it was the intention of Sigmund Stettheimer to draw out on his individual account the sum of money mentioned in the check and to transfer the title to the same to the plaintiff, then, I think, the form of the transaction was sufficient for that purpose, and the plaintiff on assenting to the arrangement became a trustee of the fund for the benefit of the creditors of Sigmund. The latter had a perfect title to the funds as between himself and his copartners, and he was free to make any lawful disposition of the same, and to effectuate that purpose to divest himself of his title and transfer it to the plaintiff. Presentation of the check and its payment transferred the title of the money from the maker of the check to the payee and the drawing of the draft by the firm, payable to the order of the plaintiff may be treated as an original transaction between the parties to that instrument. It is reasonable to suppose that Sigmund Stettheimer, in view of the unexpected insolvency of the copartnership, should be desirous of placing sufficient of his individual assets in the hands of a trustee for the purpose of devoting the proceeds of the same to the payment of his individual creditors. His partners in the banking business could not reasonably object to such an arrangement as their individual interests were not affected by the transaction, and when the funds constituting the balance standing to the credit of Sigmund’s account were deposited, it was with the special agreement that he might draw out the same at any time for the-purpose of discharging his indebtedness to his brother Joseph.
On the trial, the right of the plaintiff to recover was made to depend- upon the finding of the fact by the jury that the members of the firm consented that the funds should be withdrawn from the bank and charged to Sig *361 mund in his individual account. On that question the court charged the jury in substance as follows : ‘ ‘ The question, then, is, whether it was understood that it (the check) should be paid to the plaintiff; because, if it was simply understood that Mr. Stettheimer might go and get it himself, it still left his claim to be settled in the general accounting between the parties. But if it was agreed that the money should be paid to the plaintiff for a particular purpose, that took the amount of $10,000 out of the accounts between the parties, and it gave the plaintiff a right to recovery, if he could get it, without any action. The question is, whether or not it was understood that the money should be paid to the plaintiff. If you find that the agreement was that Sigmund Stettheimer should take the property, and not that it should be paid over to the plaintiff, the defendants are entitled to your verdict. But if it was understood upon all hands that the money was transferred to Simon Stettheimer, then, so far as that is concerned, the plaintiff has made out his case, and unless there is some other reason why he should not recover, he is entitled to your verdict.” To this charge neither of the defendants took any exception, nor did they request that it be changed or modified in any respect.
The case was tried upon the theory that if Sigmund, in giving the check to his son, the plaintiff, intended to transfer the title to the money to the latter, and the members of the banking firm assented thereto, then the plaintiff was entitled to recover on their implied promise to pay the draft in case payment was refused by the drawee.
The defendants, who resist the payment of the draft, contend that no other view can be taken of the evidence than that the plaintiff acted as the agent and servant of Sigmund, and that the latter never parted with the title to the money, and that he had all the time remained the real owner of the draft. In that view of the case I do not concur, and think that the evidence supports the position that the plaintiff became a trustee of the fund for the benefit of the creditors of Mr. Stettheimer. The latter now admits that such was his intention, and he has never done any act repudiating that position, and the plaintiff on his part admits that his title is that of trustee for the benefit of cestui que trusts mentioned.
■ As the trust created related wholly to personal property, it was not necessary that it should be in writing, and maybe created by paroi for any purpose not forbidden by law, and a delivery of the property is sufficient to pass the title. Gilman v. McArdle, 99 N. Y., 451; Day v. Roth, 18 id., 448; 1 Perry on Trusts (S. C.), 86. The statute of frauds pro *362 vides “that all transfers or assignments, verbal or written, of goods, chattels, or things in action, made in trust for the use of the persons making the same, shall be void as against the creditors, existing or subsequent, of such person,” clearly implying that they are valid as between the parties. 2 R. S., 135, § 1.
The liability of the defendants on their draft is one between them and the plaintiff, the payee therein named, and the rights of the creditors of the partnership are not misled in this action. At the time the draft was drawn the firm held the individual notes of Mr. Stettheimer, which were past due, amounting to over $10,000, and it is now insisted by the defendants, who have answered that they constituted an offset, and should defeat a recovery on the draft. The evidence tended to show that an arrangement had been entered into between Mr. Stettheimer and his co-partners that these notes should not be charged up against him in his account, and that they should be held by the firm and represent, as between themselves, so much withdrawn from the capital by him paid in, and the court specifically charged the jury “ that if they came to the conclusion that it was not agreed- that these notes should be applied upon the capital stock, but that they were to be paid in the ordinary course of business by Mr. Stettheimer, whenever the bank; wanted them paid, then the defendants were entitled to a verdict; but if they found that an arrangement was made, as the plaintiff claims, and that these notes were to be paid out of the capital stock when the affairs of the firm were finally settled, then their verdict must be for the plaintiff. If the plaintiff has faffed to establish either of these propositions, your verdict must be for the defendant. ” Neither party excepted to this charge, or requested that it be in any respect modified.
The other rulings excepted to have been examined, and we discover no error.
Defendant’s motion for new trial denied, and judgment ordered for plaintiff on the verdict.
All concur.