Hyatt, J.
This action was brought to recover a deposit with the defendant by John Brady, plaintiff’s intestate. Mr. Brady died May 20, 1885, the bank paid the money to Willis H. Smith, July 10, 1885, upon his producing the passbook with proof that it and the deposit represented thereby-had been duly transferred by Brady to Smith shortly before: his death (May 12, 1885), as a donatio mortis causa.
A donatio mortis causa is when a person in his last sickness, apprehending his dissolution near, delivers or causes to be delivered, to another the possession of any personal goods, to keep, in case of his decease.” Jacobs Law Dic., 1st Am. Ed., vol. 15, p. 23. Bouvier (Law Dic. Tit., Donato Mortis Causa) adopts Jacobs’ definition, he says, among the requirements to its validity “ that the gift may be made by the donor in peril of death and to take effect only in case the giver dies.”
These propositions have the support of a long line of cases. Story says: “It is properly a gift of personal property, by a party who is in peril of death, upon condition, that it shall presently belong to the donee, in case the donor shall die, but not otherwise. To give' it effect, there must be a delivery of it by the donor, and it is subject to be defeated by his' subsequent personal revocation, or by his recovery or escape from the impending peril of death. If no event happens which revokes it, the title of the donee is deemed to be directly derived from the donor in his life time, and, therefore, in no sense is it a testamentary act.” 12 Eq. Cases, pages 606, 607. The uncontradicted evidence is, that the plaintiff’s intestate, Brady, and Smith (the donee), had been confidential friends for about thirteen years, the most inti *500 mate terms of friendship existing between them; that Brady, who worked in the country, but coming to New York from time to time, stayed with Smith at his boarding-house; that Smith attended to all Brady’s business, and had the custody of pass-books, representing Brady’s deposits in three savings banks, one of them being the Seaman’s; that he had no living relations except Geo. W. Glynn (the plaintiff), who was the son of Arthur Glynn, his half brother on the mother’s side.
Mr. Britton testified to the occurrence on May 12: “I found Brady lying in an inner room, and I spoke to him and said: ‘ How do you feel John?’ He mumbled out something to me, after which I came out and said to Mr. Smith. ‘ That’s a very sick man.’ Previous to this Mr. Smith told me that he had Brady’s bank books, and I told him he ought to give them to him and see what he would direct to have done with them; I told Mr. Smith to ask Brady what he wanted done with his bankbooks. Mr. Smith then got the package of books and went into the room and said: ‘ John, you are very sick, or seem to be very sick. If anything happens what shall I do with those books?’ Mr. Brady said: ‘ 1 want you to have them; they are for you.’ Then Mr. Smith said. ‘ Will I send for any one?’ Mr. Brady said: ‘ I have no one to send for,’ or something of that kind. Q. Where were the_ bank books during this interview? A. Brady took them in his hand from Mr. Smith, and held them about a minute, and said to Mr. Smith’s question whether he would send for any one: ‘ I have no one to notify; you can have them, they are for you.’ ”
Mrs. Blauvelt described the occurrence as follows: “When Mr. Smith came in, I said to him that he had better speak to Mr. Brady, and see what he would like to have done with his books and papers. He said he would do so, and after-wards he went to his trunk and got his books and papers out and took them to Mr. Brady, and said: * John, you are very sick; in case you should die, what would you wish to have done with your books and papers?’ Mr. Brady said: ‘ I give them to you; I want you to have them,’ and he handed them back again to Mr. Smith.”
Willis H. Smith stated in his affidavit, which the plaintiff, by using in pagt, enabled the defendant to read in evidence: “ That on the 12th of May, 1885, the said John Brady, then being sick at 262 Eighth avenue, in this city, and being confined to his bed, and as this'deponent believes, in danger of death from the disease from which he was then suffering, handed to this deponent the three bank-books above mentioned,” including the one in this case, and said to this deponent that if anything happened to him (Brady) he wanted deponent to have said books and the money mentioned in them. That this deponent then took the said bank books from said Brady, when they were so handed to him, and has ever since had, and now has the possession thereof.”
*501 This testimony will not justify the finding that a testamentary trust was created (1 Story Equity Juris. [12th ed.], 606); nor a valid trust of any kind, there being no expressed intention to create a trust and no ascertained beneficiary. (Gilman v. McArdle, 99 N. Y., 458). It will not justify the finding that the transaction was a contract or promise to make a gift in futuro and therefore nudum pactum because there was an actual delivery and transfer of dominion; it was not a continuation of former custodianship of the sub]ect-matter of the gift (the pass-books representing the deposits) the evidence is, that Brady said at the time and in peril of death, “you can have them, they are for you” (Britton’s testimony). “I give them to you, I want you to have them,’ “he handed them back again to Mr. Smith.” (Blauvelt’s testimony).
This language is essentially different from that upon which the decision of the court of appeals rests in the case of Trow v. Shannon 78 N. Y., Rep., 451. It was there held that certain statements failed to establish an executed gift at the time they were made. The plaintiff testified that the alleged doner instructed him that “ if anything should happen to her (the meaning of which expression seems to have been well understood) to take possession of all that was in the safe and deposit it in the Safe Deposit Company, and keep his own bonds himself.” On cross-examination he varied his language by saying that “she told him to take charge if anything should happen, if she was being arrested, or had any trouble with anyone, and take the bonds and deposit them in the Safe Deposit Company and to take the 110,000.”
The learned judge, writing the decision of the court, said: “The instruction to the plaintiff to ‘take possession’ or ‘ take charge if anything should happen,’ excludes the idea that an immediate delivery was intended, and indicates that her intention was to retain the possession and control of the bonds, until or unless something should happen to render it desirable that they should be out of her possession. So long as the authority to him to take possession remained conditional and unexecuted, there was no completed gift.”
In the case at bar, actual possession and dominion were given, accompanied by positive declarations of intent.
In our opinion the evidence establishes#!! the elements necessary to a valid gift causa mortis.
The gift was made with a view to the donor’s death; there was no personal revocation by him; he died of his ailment or peril then existing; there was a delivery to the donee and complete transfer of possession of the thing and title thereto. Grymes v. Hone, 49 N. Y., 17.
It is well settled that title to a deposit in a savings bank may pass by delivery of the pass-book representing it. Penfield v. Thayer, 2 E. D. Smith, 306.
In this case the book was on its face declared to be “ The *502 depositor’s voucher, and the evidence of his property in the bank.” Delivery of the pass-book with intent to pass the title was therefore effectual to transfer the balance owing by the bank.
The case of Basket v. Haskell (107 U. S. Rep., 672), cited by the respondent, is not at variance with this doctrine. The donor there gave the donee a certificate of deposit endorsed “Pay Martin Basket, of Henderson, Kentucky; no one else, then, not till my death.”
The court held this endorsement ineffectual to transfer the title, the ground of the decision being, that the donor did not part with the possession of the fund, the donee could not get it, it amounted to a check payable after death, which upon all the authorities is invalid.
But the court say: “The certificate was payable on demand, and it is unquestionable that a delivery of it to the donee, with an endorsement in blank or a special endorsement to the donee, or without endorsement, would have transferred the whole title and interest of the donor in the fund represented by it, and might have been valid as a donatio mortis causa.
There remains but one question for consideration. Did the donor deliver the property to the dohee with the intent to vest the title of the same in the donee?
The authorities hold that intent is a necessary element of the transaction. Jackson v. Twenty-third Street R. R. Co., 88 N. Y., 526.
In our judgment the evidence unquestionably establishes the fact that the donor made a- valid donatio mortis causa with the intention as clear and unmistakable as act and speech could possibly accomplish, to vest the control, dominion and title of the property in the donee, and we utterly fail to find in the case a scintilla of evidence to sustain a contrary view.
The learned, counsel for the respondent suggests to the court in his brief a feigned case, presumably as one in his opinion parallel with the case at bar, to wit; “ If a clerk hands me a law book, and after examining it, I hand it back to him, this may be with intent to present it to him, or may be merely to have it returned to the library.” Even so, but can it be supposed by any reasonable person that the counsel would-be willing to submit to a jury for their decision, the question as to what his intention was in that case?
In the light of the evidence it is difficult to see why his case, the one at bar, should be submitted to the jury upon the question of the donor’s intention.
The gift was proven by the donee and two disinterested witnesses, they agree in all material points as to what occurred and their statements are unimpeached; there was no evidence tending to show fraud or imposition upon Brady to induce the gift to Smith; the intention of the *503 testator was clearly manifested, by his acts and declarations; the evidence stands undisputed as to all material facts at issue; there was no question for the consideration of the jury. Cornell v. Cornell, 12 Hun, 312.
The court erred in refusing to direct a verdict for the defendant upon the evidence. The verdict of the jury was contrary to the weight of the evidence. It follows, therefore, that the judgment and order appealed from should be reversed, and a new trial ordered, with costs to the appellant to abide the event.
McAdam, C. J,, concurs.