BLISS v. FOSDICK et al.

(Supreme Court, Special Term, New York County. June, 1893.)

1. TRUSTS—PERSONALTY—DESIGNATING BENEFICIARY AFTER DELIVERY.
   A certificate of stock, with a valid transfer thereof, was delivered to one F., and received by him, for the purpose of applying the proceeds to the use of charitable corporations, the names of which were not then stated to him. On the next day the donor gave F. a written statement of the purposes for which he was to use the stock, referring therein to a list, which was given to him at the same time, of the charitable corporations to be benefited. *Held,* that a valid and irrevocable trust was created.

2. SAME—DECLARATION OF TRUST—CONFLICTING STATEMENTS.
   A statement of the conditions of a trust recited that the fund ($100,000) was to be appropriated "in sums of $5,000 each to the various charity organizations, of which a list is hereto annexed." The list named only 10 beneficiaries. The donor's secretary testified that the list as first made named 20 beneficiaries, but that it was rewritten several times, and finally the number was reduced to 10; the donor saying that each should have $10,000, instead of $5,000. *Held,* that each beneficiary was entitled to $10,000.

Action by George Bliss, as executor, against Charles B. Fosdick, individually and as executor, and others.

H. H. Doherty, for plaintiff.

James E. Chandler, John W. Weed, and W. H. Field, for defendant St. John's Guild.

W. W. Cromwell and Edward B. Hill, for defendant Fosdick.

INGRAHAM, J. The one question to be determined in this case is whether or not a valid trust was created on the 19th and 20th days of December, 1890, whereby Mr. Fosdick became a trustee, and 1,000 shares of the stock of the Gutta Percha Rubber Company vested in him as such trustee. The residuary legatees in the will of Mrs. Fogg having released their interest in this property, the only question is as to the persons among whom it should be divided. If a valid trust was created prior to the death of the testatrix, then the defendant the St. John's Guild is entitled to share in the proceeds of this stock; if not, it is to be divided among the beneficiaries named in the will. Applying the rule that is now settled in this state, that "a trust of personalty is not within the statute of uses and trusts, and may be created for any purpose not forbidden by law," it may be created without writing, and a delivery of the property is sufficient to pass the title. Gilman v. McArdle, 99 N. Y. 451, 2 N. E. Rep. 464.

I must determine whether or not there was a valid trust created. If such a trust was created, the beneficiaries acquired an interest which could not be divested by any act either of the trustee or the creator of the trust; and the fact that Mr. Fosdick supposed that the execution of the codicil to the will would take the place of the trust, or in fact any supposition or act of his after the 20th of December, if a valid trust had then been created, could not affect the right of the beneficiary to have the trust enforced. On the night of the 19th of December, Mrs. Fogg delivered to Mr. Fosdick the certificate of the shares of stock in question, with a valid transfer to him of the stock, and a power of attorney to transfer the same upon the books of the company. It is clear that there was no intention to give that stock to Mr. Fosdick, but the intention was to deliver it to him for the purpose of applying it to the use of certain charitable corporations to be thereafter designated by Mrs. Fogg, and, to carry that purpose into effect, Mr. Fosdick accepted the stock. The delivery was then completed, the trustee designated, and the trust property delivered to the trustee. No valid trust had as yet been created, because there was no defined beneficiary; for, as was said by Wright, J., in Levy v. Levy, 33 N. Y. 107: "If there is a single postulate of the common law, established by an unbroken line of decisions, it is that a trust without a certain beneficiary who can claim its enforcement is void, whether good or bad, wise or unwise;" and this has been adopted by the highest court of this state many times since as a correct statement of the rule, but with that exception it is clear that a valid trust was created upon the night of the 19th of December. On the morning of the 20th, Mr. Fosdick, with the stock still in his possession, again called upon Mrs. Fogg, and produced for her signature a letter to himself, which evidently was intended to contain a statement of the terms of the trust. That letter recites the delivery of the stock to Mr. Fosdick, and then contains the following provision: "From the proceeds thereof I desire that you do appropriate the sum of $100,000 in the name of Elizabeth Fogg, in sums of $5,000

each, to the various charity organizations of which a list is hereto annexed;" and that letter was signed by Mrs. Fogg, and delivered to Mr. Fosdick, who retained possession thereof.

We now have a trustee appointed, a delivery of the trust property to him, and a statement of the terms and conditions of the trust. It appeared in evidence that during the night of the 19th of December and the morning of the 20th of December, a Miss Norton, who was then residing with Mrs. Fogg, and acted as her secretary and companion, had prepared, at Mrs. Fogg's request, a list of charitable and benevolent corporations which she had copied out, and which she had delivered to Mrs. Fogg, and it is quite evident that it had been Mrs. Fogg's intention to adopt that list as the beneficiaries of the trust of which Mr. Fosdick was trustee. It was this sum of $100,000 only that Mrs. Fogg had in mind at that time, and Miss Norton expressly says that she connected this sum of $100,000 with the list of corporations which was prepared at Mrs. Fogg's request. It is also clear, both from Mr. Fosdick's testimony and Miss Norton's testimony, that on the morning of the 20th of December this letter was signed by Mrs. Fogg, and such list was placed in Mr. Fosdick's possession as the list of corporations to be benefited by the trust. It is true that it was not physically attached to the letter signed on the morning of December 20th, but I think it clear that both the letter and the list were in Mr. Fosdick's possession at the same time on that morning, and that both Mrs. Fogg and himself understood that that list was a list of the benevolent corporations that were to be the beneficiaries of the trust. I think, then, a valid trust was created. It is clear, from all the evidence, that it was the intention of Mrs. Fogg to make an absolute gift of this stock to Mr. Fosdick at the time for charitable purposes; that she did not intend to, nor did she, retain any control over the stock or its proceeds, except so far as it was necessary to designate the beneficiaries, and, when that was accomplished by the preparation of this list, and the delivery of the list to Mr. Fosdick as the list of beneficiaries, a valid trust was then created, and Mr. Fosdick was then under legal obligation to apply the stock for the purposes of such trust, and, as before stated, neither Mr. Fosdick's misconception of his duty, nor any subsequently formed intention as to what he would or would not do, would relieve him from the legal obligation to perform this trust, or would take away from the beneficiaries entitled to an interest in the trust their right to have the trust performed. There was no power of revocation reserved to Mrs. Fogg by which she could revoke the trust thus created, nor do I think the execution of the codicil to the will could be held to be such a revocation. It would appear to be rather in the nature of a confirmation of the trust than a revocation. The fact that the St. John's Guild was included in the list delivered to Mr. Fosdick, and was excluded in the list of beneficiaries named in the codicil to the will, is unexplained by any testimony; and whether that arose from a mistake of Mr. Pritchard, who drew the codicil, or arose from the fact that the testatrix had changed her

mind as to the object of her bounty, is not at all material if in fact a valid trust had been created on the morning of December 20th.

There is another question, however, and that is as to how much the St. John's Guild is entitled to from the trustee. I think the letter signed by Mrs. Fogg must be held to contain the terms of the trust, and in that letter all prior and verbal arrangements are merged, for a valid trust was not created until that letter had been signed, and a list of the beneficiaries had been delivered to Mr. Fosdick. By this letter, Mr. Fosdick, as trustee, is directed to appropriate the sum of $100,000 in the name of Elizabeth Fogg, in sums of $5,000 each, to the various charity organizations of which a list is annexed. The list contains but 10 charities, and it is apparent upon its face that it is impossible to appropriate the sum of $100,000 to 10 charities in sums of $5,000 each. There is an inconsistency, and thus the court can look at the declarations of the donor, and consider the surrounding circumstances, in determining just what the intention of the donor was. Miss Norton testified that during the night of December 19th and 20th, while she was engaged in preparing this list: "I was making this list during the night. I made different lists, until I got one pretty straight as to what she would give, and then she changed it from $5,000 to $10,000 apiece." It would thus appear that it was the donor's intention to give to the charities named in the list, at the time the list was completed, the sum of $10,000 to each charity. The letter containing the conditions of the trust had been prepared by Mr. Fosdick in consequence of his interview on the night of December 19th, when it was Mrs. Fogg's intention to distribute the fund among 20, instead of 10, charities. During the night she had changed her mind, and finally determined upon the list of charities which should be the objects of her bounty, and had determined that there should be 10 such charities, and each should receive $10,000. This intention can be effectuated by simply disregarding the provisions in the letter to Mr. Fosdick, "in sums of $5,000 each," which is inconsistent with the remainder of the letter, which desires Mr. Fosdick to appropriate the sum of $100,000 to the charity organizations of which a list is thereto annexed. The terms of the codicil also show that she had abandoned the idea of limiting each corporation to $5,000; but her intention was to distribute that sum of $100,000 for charitable purposes. There is nothing to show that this was a gift causa mortis. On the contrary, it clearly appears that it was the intention of the donor to make a present gift of the stock to the charities designated by her, which would be irrevocable, and not to take effect upon her death.

My conclusion therefore is that on the morning of the 20th of December, 1891, a valid trust was created; that this 1,000 shares of stock vested in Mr. Fosdick, as such trustee, to distribute the proceeds of that stock among the 10 religious corporations mentioned in the list that was on that morning delivered to him; and that judgment should be entered directing him to dispose of said

stock, and to distribute it among such corporations.  Decision and judgment to be settled on notice, when the question of costs can be determined.