(115 App. Div. 278)

## MORRIS v. WUCHER.

(Supreme Court, Appellate Division, First Department. November 5, 1906.)

EXECUTORS—ASSETS OF ESTATE.

Plaintiff's testator gave a priest of his church a sum of money on an understanding that the priest should pay interest to testator during his lifetime, and dispose of the money after testaor's death, according to instructions which testator would leave in a letter with his wife. After testator's death a letter addressed to the priest was found among testator's effects, which letter requested the priest to make a certain distribution of the fund. *Held*, that whether the priest's relation to the fund was strictly that of a trustee or not, the executor was not entitled to recover the fund.

[Ed. Note.—For cases in point, see vol. 22, Cent. Dig. Executors and Administrators, § 308.]

Laughlin, J., dissenting.

Appeal from Trial Term, New York County.

Action by Frances Morris and another, as executors of the will of Joachim De Comps, deceased, against Theophilus Wucher. From a judgment in favor of defendant, plaintiffs appeal. Affirmed.

Argued before PATTERSON, INGRAHAM, LAUGHLIN, and HOUGHTON, JJ.

Simon Sultan, for appellants.

Frederic R. Coudert, for respondent.

INGRAHAM, J. The plaintiffs' testator died in the year 1905, leaving a last will and testament of which the plaintiffs were executors.

He was a member of the church of St. Vincent de Paul, in the city of New York. In the year 1896 he paid to the defendant, one of the clergymen connected with that church, $4,000. The defendant paid to the testator during his lifetime interest upon that sum at 4 per cent. The only testimony as to the circumstances under which that money was paid was the evidence of the defendant, who testified:

"Mr. De Comps gave me the $4,000 in 1896, when I needed the money for church decorations. He said to pay him interest during his lifetime to dispose of afterwards according to his instructions which he would· leave in a private letter."

This evidence was read by the plaintiff from a deposition of the defendant Wucher before the surrogate.

I think the effect of this transaction was that there was paid to the defendant a sum of money upon a contract by which the defendant agreed to pay to the testator interest upon the amount during his life; the principal to be disposed of by the defendant as the testator should thereafter direct. Certainly, under this agreement, whether it could be called a trust or contract, or obligation, the money was given to the defendant to dispose of in accordance with the understanding between the parties. There was no obligation of the defendant to repay the money to the testator at any time. The title to the money vested in the defendant, and whether the defendant's relation to the fund was strictly trustee or not, the testator could not have compelled the defendant to repay him the money. Gilman v. McArdle, 99 N. Y. 451, 2 N. E. 464, 52 Am. Rep. 41. Nor have the plaintiffs as the testator's personal representatives the right to compel the defendant to account to them for the money after the testator's death. Under the terms of the contract the only obligation of the defendant to the testator was the obligation to pay to him interest on the amount during his life, and it was never contemplated by the parties that either the plaintiffs' testator or his personal representatives should be entitled to recover the money that ·had been paid to the defendant. Plaintiff's testator had the right to pay his money to the defendant upon such terms as he thought best, and I do not think his personal representatives can question such a payment or recover back the money in violation of the terms of the contract under which it was paid to the defendant. Nothing that subsequently happened in any way changed the relation of the defendant to this sum of money. It appeared that subsequent to the delivery of the money the plaintiff's testator gave to the defendant a letter, the contents of which did not appear; but it may be assumed that it related to the disposition that the defendant should make of the money after the testator's death. In the year 1904, however, the testator demanded a return of this letter, stating that he wished to make a change in the disposition of the money to be made by the defendant, and, in consequence of that request, the defendant returned to the testator the letter. At that time the plaintiff's testator told the defendant to call, after his death, upon his wife for a letter in relation to this fund. Subsequent to the death of the testator the defendant wrote a letter to the plaintiff's testator's wife stating that the plaintiff's testator had requested him to ask her for an envelope, sealed, which he would leave

amongst his papers to the defendant's address, or to the address of the church. She discovered a letter addressed to the defendant which she caused to be delivered to him. This letter is undated, signed by the plaintiff's testator, and is as follows:

"New York City.

"To the Very Dear Father, Th. Wucher: When you receive this note I shall be no more. I want to beg you by the present to have the charitable kindness to make the following distribution for me of the four thousand dollars you will owe no account of it to any one after my death and if you will kindly make the distribution of it which I shall point out to you, I should leave in peace and satisfied and would be grateful to you. I know that all those who will receive those little gifts are worthy and deserving of it, and I recommend myself to your good and pious prayers.

"Yours with all my heart,　　　　　　　　　J. L. De Comps."

Then follows a direction to distribute $3,900 to various individuals or corporations, and providing for $100 "which shall remain in your hands for masses for the repose of the souls of my family and myself," and this memorandum closes:

"Very dear Father Wucher these are my last wishes, counting on your kindness to execute them, pardon me the trouble I give you."

Subsequent to the receipt of these letters the defendant expended $100 for masses and distributed a portion of the $4,000 among those indicated by the testator; there remaining at the time of the trial in his hands the sum of $3,650. If my conclusion above stated is correct, that, under the agreement under which the money was paid to the defendant, there was no obligation on the part of the defendant to repay the money to the plaintiff's testator, or to his personal representatives after his death, the action cannot be maintained.

This was the opinion of Mr. Justice SCOTT, before whom the action was tried at Special Term; and the judgment should therefore be affirmed, with costs.

PATTERSON and HOUGHTON, JJ., concur.

LAUGHLIN, J. (dissenting). I think that the judgment should be reversed. The defendant admits that he received $4,000 from the testator in the year 1896, and the evidence upon which he claims the right to retain it is the letter referred to in the prevailing opinion, which was not delivered to him until after the death of the testator, and his own testimony as to what transpired between him and the testator at the time he received the money, which is as follows:

"He made me a donation the sum of $4,000 in 1896. I paid interest thereon during his lifetime at 4 per cent. twice a year, during the months of December and June in each year. Mr. De Comps gave me the $4,000 in 1896, when I needed money for church decorations. He said to pay him interest during his lifetime—to dispose of afterwards according to his instructions which he would leave in a private letter. In case he should not have time to do that, the money should be given to the church."

The fair and reasonable inference from this evidence is that the money was loaned to defendant during the life of De Comps. It was not a gift either inter vivos or causa mortis. De Comps was not ill,

and he lived many years thereafter. He reserved semiannual interest to himself, and the right to dispose of the principal. He contemplated disposing of the principal by letter instead of by will, and he attempted to carry such intention into effect. That attempt destroyed the condition upon which defendant was to give the fund to the church. Without regard to this, however, the only theory upon which the judgment can be satisfied is that it was a gift in præsenti to the defendant, individually. The learned father makes no such claim as that. He does not seek to hold it for himself, nor could he lawfully on his own evidence. He claims the fund for the beneficiaries named in the letter. The difficulty with that contention, and with any claim that the church is entitled to it, is that there was to be and was no gift to him as trustee, or to the beneficiaries until the death of the testator, and a gift, then, could only be valid when evidenced by an instrument executed as a will, which concededly this was not.

I therefore vote for reversal.