In the Matter of the Estate of LOTTIE BEDNOWITZ, Deceased.

Surrogate's Court, Kings County, June 15, 1933.

*Harry L. Kreeger* [*Harry L. Kreeger* and *William Roth* of counsel], for the petitioner.

*Lawrence Krauss*, for the respondent.

WINGATE. S. The main issue in this accounting proceeding, which is raised by an objection that the executors have failed to account for all of the assets of the estate, concerns the effect of a certain agreement between the decedent and her son, dated November 12, 1928. This agreement, which was executed on the same day as testatrix's will, is set forth verbatim in the seventh item of the letter, with the following introductory statement: " Whereas there now stands upon the books of the Benze-Perfection Sample Card Co., Inc., a domestic corporation * * *, twenty-five (25%) per cent of the issued stock of said corporation, in the name of my son Sydney E. Bender, to which stock he holds the legal title for me as equitable owner, and whereas my son Sydney E. Bender is executing simultaneously with this execution of this will, a separate and dependent agreement hereinbelow set forth, it is my will

and desire that the disposition of the said stock which my son Sydney E. Bender this day covenants to make, be confirmed and ratified."

The agreement, which was executed both by the testatrix and the son, recited that the stock in question was deposited in escrow for his life and those of his three associates under an arrangement whereby, upon the death of any one of them, the shares of the one dying should become the property of the survivors and $50,000 insurance should be paid to the estate of the decedent; and that $45,000 of this policy had been made payable to the mother; and that the beneficiary under this policy was being changed to the mother, if living, and if not, to her five children in equal shares.

It was thereupon provided in effect that (1) if the son should survive the mother he should pay twenty-five per cent of his net annual salary and dividends from the company, attributable to this stock to the four other children of the mother, or their representatives, in equal shares; (2) if the son predeceased the mother, the agreement should end and she should receive the $45,000; (3) the son might at any time terminate the agreement by distributing the stock in question to the mother's five children, including himself, or their representatives in equal shares; (4) if after the death of the mother, the son sold the stock, the proceeds should be divided by him among the mother's five children, including himself, or their representatives, in equal shares.

The object aimed at by this agreement is entirely obvious and wholly legal. The particular legal pigeon-hole into which it should be placed is wholly immaterial. In certain aspects it resembles a trust, but if this description be assigned to it, it is nevertheless unquestionably valid since it must terminate in any event with the life of the son.

In the opinion of the court it more closely approximates a lease with a power of cancellation given the lessee, and a further provision for the termination on his death.

In any event, its result was to wholly divest the testatrix of any interest in the stock as such. In its place arose an agreement by the son to perform certain acts which would accrue beneficially to the mother if she were living at the time of the occurrence of the specified contingencies, and to others in case she died before they happened. These promises took the place of, and were accepted by her in lieu of her former interest in the stock. By reason of the fact that her personal benefits under the agreement were limited to the duration of her life, it is obvious that upon her death nothing remained in her which could pass to her estate or executors. There-

upon, the conditional rights of the persons whose alternative benefit was contemplated came into effect. The agreement was wholly valid on fundamental principles of contracts. (*Morris* v. *Wucher*, 115 App. Div. 278, 279; *Casey* v. *Casey*, 161 id. 427, 428, 429; *Gilman* v. *McArdle*, 99 N. Y. 451, 460, 461.)

The fee of $400 paid to the attorneys for the executors for services and disbursements is not unreasonable in view of the labor performed and the size of the estate.

Both objections to the account are accordingly overruled.