### DAY, EX PARTE.

*In the matter of proving the last Will and Testament of* THOMAS DAY, *deceased.*

A CONJOINT or mutual will is valid, and may be admitted to probate on the decease of either of the parties, as his will.

Such an instrument, though irrevocable as a compact, is revocable as a will, by any subsequent valid testamentary paper.

But if unrevoked, it may be proved, provided it has been executed with the formalities and ceremonies essential to the due execution of a will.

THE SURROGATE. The will propounded for probate is a Holograph, bearing date August 20, 1850. The last clause of it purports to be a testamentary disposition by the decedent's wife of some property belonging to her in her own right,—in the language of the will, "testified by her signature hereto." The will was executed under seal both by the decedent and by his wife, in the presence of three witnesses.

An agreement to make mutual wills appears to be valid,

and, after the death of either of the parties, irrevocable. (*Lord Walpole* vs. *Lord Orford*, 3 *Vesey*, 402 ; *Hinckley*, vs. *Simmons*, 4 *Ves.*, 160 ; *Izard* vs. *Middleton*, 1 *Dessaus. C. R.*, 116 ; *Rivers* vs. *Rivers*, 3 *Id.*, 190 ; *Goïlmere* vs. *Battison*, 1 *Vern.*, 48 ; *Dufour* vs. *Perraro*, 2 *Harg. Jurid. Arg.*, 304.) This curious subject is admirably discussed in Mr. Hargrave's luminous opinion in the Walpole case. It is there conceded, as was indeed established at law in the same case (7 *D. & E.*, 138), that the effect of such an agreement could not be to make a will of that kind irrevocable, for from the very nature of the transaction, testamentary dispositions are revocable. But it was contended that a compact of that kind could be enforced in equity against the estate of the defaulting party after his decease, on the ground of an attaching equitable trust.

It is not necessary in the present instance to examine that interesting question, for there is no allegation of an agreement to make mutual wills, nor is there any subsequent will or codicil coming in conflict with that propounded. In *Hobson* vs. *Blackburn*, 1 *Addams.*, 274, two sisters and a brother made a mutual or conjoint will, uniting together in the execution of the instrument. It began in this way : " We, Martha, Susannah, and Joshua Hobson, being in health of body, and sound in mind, do agree to the following assignment of our property in case of each other's decease; exclusive of five hundred pounds the disposal of which we propose leaving a memorandum of, according to our particular liking ; the remainder of our property we resolve to be left in this manner," &c. The instrument then made regular testamentary provisions, and concluded, " we agree to leave each other, with our brothers, William and George Hobson, executors, to this our last-will and testament, to which we put our hands," &c. Martha Hobson, one of the parties to this instrument, after the death of Joshua, made a separate testamentary disposition of her property. Upon this case Sir John Nicholl said, " I have no hesitation, whatever, in rejecting

the allegation, propounding the mutual or conjoint will, as that of the party deceased in this cause, on the principle that an instrument of this nature is unknown to the testamentary law of this country ; or, in other words, that it is unknown *as a will*, to the law of this country at all.  It *may*, for aught that I know, be valid *as a compact*,—it may be operative in equity, to the extent of making the devisees of the will, trustees for performing the deceased's part of the compact.  But these are considerations wholly foreign to this Court, which looks to the instrument entitled to probate, as the deceased's *will*, and to that only.  The allegation plainly proceeds upon a notion of the *irrevocability* of the instrument which it propounds as the *will* of the deceased.  Why this very circumstance destroys its essence *as a will*, and converts it into a *contract ;* a species of instrument over which this Court has no jurisdiction.  Upon these broad, and as I apprehend, sufficiently intelligible grounds, I reject this allegation."

So far as this judgment proceeded upon the *revocability* of a will by a subsequent testamentary paper duly executed, notwithstanding any contract to the contrary, the decision is beyond criticism.  But the strong, nervous language of the Judge went beyond the bounds of the particular case presented for adjudication, and has given foundation to the idea that a mutual or conjoint will is void, and cannot be admitted to probate.  But why should this be so, when the instrument possesses a testamentary character, and no other testamentary provision is brought in conflict with it; when no question of revocation arises, and the compact of mutuality has been observed by the parties ?  Such a will is not void as contrary to public policy, for it may be sustained as a contract in equity.  The conjoint will rejected as the will of one of the parties in *Hobson* vs. *Blackburn*, because revoked by a subsequent *separate* will of that person, *had nevertheless been previously admitted to probate by the same Court*, as the last will and testament of Joshua Hobson, another of the par-

ties who died without having altered or revoked his part of the mutual will. This shows that the case turned on the binding force of the will as an agreement not to revoke, and not upon its validity if no revocation had been alleged. Mr. Hargrave states, that so far as his researches enabled him to assert in relation to mutual wills, "no such precedent is to be met with in our *printed* books." But he shows that in the case of *Dufour & Perraro*, which came before Lord Camden, the mutual will had been admitted to probate in the Prerogative Court. The parties there, being husband and wife, joined in a will expressed to be their mutual last will, and on the death of the husband, the wife proved it regularly, and took possession of her husband's property. She subsequently died, leaving a will by which, disregarding the mutual will, she made a different disposition of her separate property. Lord Camden, in decreeing that the wife had bound her assets to make good all the bequests of the mutual will, observes, "The novelty of the case, more than the difficulty, caused me to suspend my judgment, mutual wills being unknown in this country. In this respect the case was so new, that the counsel were driven to resort to foreign authors, where these testaments are in use. And this particularly made me think more upon the subject, in order to see if it was indeed necessary to call in this extra learning to my assistance. But I am of opinion that this case must be decided by the law of this country. The mutual will was made here. The testators were subjects of this kingdom, and the estate devised was lodged in our own funds; so that this disposition, notwithstanding the uncommon form of the testament, must be ruled by the law of this Court; and I trust that the everlasting maxims of equity and conscience, upon which the jurisdiction of this Court is built, are capacious enough, not only to comprehend this, but every other case that may happen; and that the justice of this Court is co-extensive with every possible variety of human transactions." "The mutual will is in the whole

and every part, mutually upon condition, that the whole shall be the will. There is a reciprocity that runs throughout the instrument. The property of both is put into a common fund, and every devise is the joint devise of both." "If not revoked during the joint lives by any open act, he that dies first, dies with the promise of the survivor, that the joint will shall stand. It is too late afterwards for the survivor to change his mind, because the first dier's will is then irrevocable, which would otherwise have been differently framed, if the testator had been apprised of this dissent." "Though a will is always revocable, and the last must always be the testator's will, yet a man may so bind his assets by agreement, that his will shall be a trustee for performance of his agreement." It is not to be overlooked, that the whole groundwork for Lord Camden's decree in this case,—the very foundation of the equity which he administered,—was the *validity* of the mutual will, so far as the deceased *husband* was concerned, unless *revoked;* and that having died without revoking it, " the first dier's will is then *irrevocable,*" and for the very reason that it is a *good* and *valid will,* because *irrevocable* by death, the other party in equity will be held to stand by her part of the will. How a decision could very well more clearly sustain the validity of a mutual will, unless revoked, it is very difficult to discover.

The distinction made by Lord Camden between the mutual will, as a will, and its revocability as a will,—and as an agreement and its irrevocability as an agreement, is precise and clear. Furthermore, the cases cited establish the admissibility of such an instrument to probate, as the will of all or any of the parties on their decease, unless it be opposed by some other posterior testamentary instrument, so as to raise the question of revocation in the Spiritual Court.

By the civil law, conditions contained in wills, " that are contrary to good manners," were unlawful. Among these were reckoned, " those which a testator adds to a dis-

position in favor of some person, in order to procure for himself the like benefit, as if he should institute such a one for his heir or executor, in case the said person hath on his part, named this testator, to be his heir or executor."

Domat, in commenting upon this rule and the decree of the Roman Senate, by which it was established, says, " We are not to reckon in the number of the dispositions spoken of in this article, the *mutual* testaments of two persons, who institute reciprocally one another heir or executor; for neither of the two anticipates the will of the other, in order to procure the said institution in his favor; but both the one and the other having a reciprocal affection, which can only proceed from just causes, there is no reason why the one and the other should not express it by such an institution as this is. And it is expressly enough approved of, by these words of the first of the texts cited on this article : *Captatorias institutiones non eas senatus improbavit quæ mutuis affectionibus judicia provocaverunt.* It is for these reasons that the reciprocal testaments have been approved of by the Novel of the Emperor Valentinian, *De Testamentis*, and by our usage, and likewise between husband and wife in some customs." (*Domat, Pt.* 2, *Lib.* 3, *Tit.* 1, § 8, *Art.* 20 ; *Digest, Lib.* 28, *Tit.* 5 ; *De Heredibus Instituendis C.* 70.)

In *Clayton* vs. *Liverman*, 2 *Devereux & Battle*, 558, a conjoint will, offered for probate after the death of both the parties, was rejected upon the idea that *Hobson* vs. *Blackburn*, as decided by Sir John Nicholl, established the invalidity of such instruments as wills. Judge Daniel, in dissenting from the opinion of his brethren, admitted, that as a *joint* will it could not be admitted to probate, but urged with great force and earnestness, that it should have been admitted to proof as the separate will of each of the decedents. The idea that a will is invalid because signed by more parties than one, and purporting on its face to be the will of more than one, is not in consonance with established law. In *Rogers' Appellants*, 2 *Fairfield*, 303, a will exe-

cuted jointly by husband and wife, devising estate of which
he was sole owner, was on his death sustained as a valid
will of the husband alone. No particular form is required
in relation to the construction of a will, provided it be exe-
cuted with the proper solemnities. "There is nothing,"
said Lord Hardwicke (3 *Atk.*, 163), "that requires so little
solemnity as the making of a will of personal estate, ac-
cording to the ecclesiastical laws of this realm; for there
is scarcely any paper writing which they will not admit as
such." Thus, there is hardly any form of paper, which has
not been admitted to probate, provided it was the inten-
tion of the deceased it should operate after his death.
Bonds, promissory notes, letters, memoranda, receipts,
drafts, assignments, deeds and marriage settlements have
all been admitted to probate. (*Masterman* vs. *Maberley*, 2
*Hagg.*, 248; *Cro. Jac.*, 144; 1 *Vesey*, 127; *Shingler* vs.
*Pemberton*, 4 *Hagg.*, 356; 2 *Vesey*, 440, 591; *Thorold* vs.
*Thorold*, 1 *Phill.*, 1; 1 *Id.*, 218; 2 *Hagg.*, 247, 554; 2
*Vesey, Jr.*, 205; 2 *Phill.*, 575; 1 *Hagg.*, 130, 448.) Cases
without number might be cited to this effect. In *Pass-
more* vs. *Passmore*, 1 *Phill.*, 216, Sir John Nicholl said,
that "various instruments not exactly in the form of a
will,—letters, deeds of gift, *marriage settlements*,—have
been held to be testamentary, if the Court has been satis-
fied as to the intention of the testator." Articles of agree-
ment between A. and B., and signed by both of them, have
been held to be testamentary. In *Green* vs. *Proude*, 1
*Mod.*, 117, on a trial in ejectment, the plaintiff produced a
deed made between father and son, whereby the father
agreed to give the son so much, and the son agreed to pay
certain sums and debts, and there were some particular
expressions resembling the form of a *will*, but the writing
was both sealed and delivered as a *deed;* and they gave
evidence that the father intended it for his last will, which
the Court said was a *good proof of his will.* In *Master-
man* vs. *Maberly*, 2 *Hagg.*, 235, Sir John Nicholl himself,
in a case of contest, admitted to probate two *bonds*, saying,

" It is also *settled law*, and several cases have been decided, that if the paper contains the disposition of the property to be made after death, though it were meant to operate as a settlement, a deed of gift or a bond, though such paper were not intended to be a will nor other testamentary instrument, but an instrument of a different shape, yet if it cannot operate in the latter, it may nevertheless operate in the former character." He then proceeds to mention many cases in which various kinds of instruments, including marriage articles, had been passed to probate, and concludes, " So that it is *a settled point*, that the *form* of a paper does not affect its title to probate, provided that it is the intention of the deceased, that it should operate after his death."

Now, if marriage settlements and articles of agreement may be admitted to probate, then it is no valid ground of objection, that the instrument is signed by two instead of one, or that it is not the *sole* act of the decedent, or that it contains matter of contract as well as of testament. And Sir John Nicholl's own language in *Passmore* vs. *Passmore*, and *Masterman* vs. *Maberly*, shows that his decision in *Hobson* vs. *Blackburn*, has been entirely misconceived,—that instead of deciding that a compact of a testamentary character could not be proved as a will, because it was a mutual or conjoint act, he only held that such an instrument could not be set up as *irrevocable* against a subsequent will revoking it. This ruling was in harmony with the civil law on the subject of revocations, which termed *derogatory*, all clauses in a testament ordaining that subsequent revocations should be ineffectual, and held that no man can deprive himself of the liberty to dispose, and to revoke former dispositions. (*Domat, Pt. 2, L. 3, Tit. 1,* § 5.) Such clauses were simply void, but they did not annul the will in other respects, except as modified by another testament.

Nor do I see any thing in the formal requisites prescribed by our statute, in relation to the due execution of

wills, militating against the admission of a mutual will to probate, from the mere fact that it was executed as a will by two persons at the same time, provided that all the proper solemnities were duly performed. The subscription at the end of the will, the declaration of its testamentary character and the attestation by two witnesses, if proved, are none the less true of *each* of the testators, because true of *both*. If the instrument be propounded as the will of one, the signature and declaration of the other may be regarded as mere surplusage, so far as the Probate Court is concerned. Because the will happens to be made in conformity to some agreement, or contains on its face matter of agreement, or shows mutuality of testamentary intention between two persons, and a compact or intention not to revoke, in my judgment it is none the less a will ; and if it happens that the party who first dies, observes religiously his solemn compact, and dies, leaving this in fact his *last* will and testament, it ought to be admitted to proof as such. The compact is not unlawful, it is not contrary to good manners, it will be sustained in a Court of Equity, on the ground that the will is valid at law, and by the death of the first dier, has become irrevocable ; unless there is some matter of form, some technical arbitrary rule springing out of the statute, or the necessary form and construction of a will, it is difficult to see why a conjoint will should not be admitted to probate on the death of either of the parties, as his *separate* will. To say that such a will "is unknown to the law of this country," is an expression which, I have no doubt, the great and learned Judge who used it intended to apply, not to the form of the will, but to the peculiar force and effect of these mutual or conjoint wills, by the laws of those countries on the Continent, where the civil law prevails. To suppose, that because the will was subscribed by and purported to be the will of three persons instead of one only, he refused it probate, is, as I have shown, to suppose him in opposition to what he elsewhere terms the *settled* law.

The will now propounded for proof, is testamentary in its form and character, and is sufficiently proved under the provisions of our statute, and I am of opinion it ought to be admitted to probate as the last will and testament of the decedent.