IN THE MATTER OF THE PROBATE OF THE LAST WILL AND
TESTAMENT OF FREDERICK DIEZ.

Upon an application made to the Supreme Court under the provisions of
the act of 1840 (chap. 384, Laws of 1840), to prove an exemplified copy
of a foreign will, an order was made adjudging that the instrument so
offered was not the last will and testament of the deceased, and denying
the application, which order was made upon the ground that the case was
not brought within that statute. In proceedings before a surrogate for
the probate of the will itself,—*Held*, that such order was no bar.

A seal is not requisite to a will of real or personal estate.

An instrument which is not to have any operation until after the death of
him who executes it, is a will, notwithstanding that it may have been
executed in pursuance of a previous promise or obligation appearing on
the face of the instrument.

A mutual will executed by husband and wife, devising reciprocally to each
other, is valid. Such an instrument operates as the separate will of
whichsoever dies first.

(Argued April 11, 1872; decided November 12, 1872.)

APPEAL from order of the General Term of the Supreme
Court in the second judicial department, affirming a decree
of the surrogate of the county of New York, admitting to
probate the will of Frederick Diez.

The testator was a naturalized citizen of this State, domi-
ciled in the city of New York. In May, 1868, he went to
Germany and died at Sonthofen, Bavaria, November 1, 1868.
Previous to his death the following instrument was executed :

"MATRIMONIAL AND ALSO TESTAMENTARY AGREEMENT.

" G. K. N., 898.—This day, Sunday, November 1st, 1868
(one thousand eight hundred and sixty-eight), at eleven A. M.,
appeared before me Francis Xaver Malor, royal notary at
Sonthofen, in the house No. 80 at Sonthofen, whither I went
at once, according to the request of the parties.

" 1. The hotel proprietor, Mr. Frederick Diez, from New
York, in the United States of America, at present being in
Sonthofen, who, although lying in bed in an upper room in
the above named house, suffering from a complaint in the

stomach, and very weak, is in full possession of his mental faculties, and therefore must be deemed fully competent to make dispositions, whereof I have convinced myself by conversation with him.

"2. His wife, Mrs. Ursula Diez, born Trunk, of the same place; lastly:

"3. The two impartial witnesses, whose presence had been especially requested, and who, after examination, have been found free of all exceptions:

"(a.) The practicing physician, Dr. Leonard Stich, of Son thofen, and

"(b.) The merchant, Mr. Max Mathes, of Sonthofen; both of the latter I am personally acquainted with as to name, occupation and residence, while the name, occupation and residence of the former two persons were only made known to me by the two witnesses present, and Mr. Frederick Diez and his wife, Mrs. Ursula Diez, requested me to reduce to writing and certify in my official capacity the following:

"MATRIMONIAL AND ALSO TESTAMENTARY AGREEMENT.

"'I. We have made, as yet, no conjoint disposition of any kind concerning the hereditary succession in case of death.

"'II. Inasmuch as we have, by joint exertions, acquired the property now in our possession, and inasmuch as the offspring of our marriage, our only child, Mary Diez, has already in the tenderest age departed this life, we hereby determine that upon the decease of one or the other of us, the surviving husband or wife shall receive the entire property of the one having died first, that is to say, the existing jointly acquired property, to his or her, unconditionally, free, sole possession and sole ownership, and shall not be bound to pay over anything to any person in case of a death.

"'III. Also all former dispositions concerning the hereditary succession which may have been made by us singly, or with the consent of both, however and wherever made, between the living, or for the case of death, are hereby set aside and declared null and void.

" ' IV. We desire that a first exemplified copy of the fore-going matrimonial and also testamentary agreement be delivered to us, and we will bear—

" ' V. The expenses incurred jointly.

" ' Hereupon the present instrument was drawn up by special request of the parties, and after it had been read to them in the presence of the two above-named witnesses, and after their attention had been called to all such legal relations as might possibly stand in the way of such a contract, and after being approved by them, it was ratified to the full contents of it, and signed by them, by the two witnesses, and by myself, the undersigned royal notary.

" Mark of Mr. Frederick Diez, who is unable to write on account of great weakness, wherefore the two witnesses have subscribed for him.     ⋈

" URSULA DIEZ.

" L. STICH,
            *Physician.*

" MAX MATHES.

" FRANZ XAVER MALOR,

[L. S.].                               *Royal Notary.*"

In 1869 proceedings were instituted in the Supreme Court under the provisions of chap. 384, Laws of 1840, to prove an exemplified copy of this will (the original being then in the possession of the notary of Sonthofen, who drew it). An order was made therein, adjudging " that the instrument so offered for probate is not the last will and testament of Frederick Diez, sufficient at law to pass either real or personal property," and denying the application.   The decision was made upon the ground that possession by a notary was not possession by a court or tribunal of justice, and that the case was not brought within the provision of the statute.   The original was subsequently procured and presented for probate to

the surrogate of New York by Ursula Diez, widow of the deceased. Probate was contested by Christian Supp, a residuary legatee under a former will. A commission was issued by the surrogate with the will annexed and returned with the depositions of the two witnesses, and also of the notary who drew the will, and upon these depositions, with other testimony, the instrument was admitted to probate. The General Term of the first department sent the case to the second department.

*H. P. Townsend*, for contestant and appellant. A joint or mutual will is unknown to the testamentary laws of England. (*Clayton* v. *Livermore*, 2 D. & B., 558; Jarman on Wills, 26; *Hobson* v. *Blackburn*, 1 Addams' Eccl. R., 274; and is also unknown to the testamentary laws of this State; Williams on Exrs., 9, 10; 1 Cowp., 268.)

*F. S. Stallknecht* and *Elial F. Hall*, for proponent and respondent. The paper propounded for probate is a good and valid will. (1 Jarman on Wills, 13; *Green* v. *Proude*, 1 Mod., 117; K. B., 16, 74; *Ex parte Day*, 1 Brad., 484; *Passmore* v. *Passmore*, 1 Phill., 218; *Masterman* v. *Maberly*, 2 Hagg., 235; *Dufour* v. *Pereira*, 1 Dickens, 419; *Walpole* v. *Orford*, 3 Vesey, Jr., 416; 2 Har. Jur. Ar., 304; *Hinckley*, v. *Simmons*, 4 Vesey, Jr., 160; *Hobson* v. *Blackburn*, 1 Addams, 274; *In re Stracy*, 1 Deane & S., 6; *In re Raine*, 1 S. & T., 144; *In re Lovegrove*, 2 id., 453; *Rogers, app'ts*, 2 Fairf., 303; *Clayton* v. *Livermore*, 2 D. & B., 558; *Bynum* v. *Bynum*, 11 Ired., 632; *Ex parte McCormick*, 2 Brad., 169; *Lewis* v. *Scofield*, 26 Conn., 452; *Evans* v. *Smith*, 28 Ga., 98; *Walker* v. *Walker*, 14 Critch., 157; 1 Jar. on Wills, 13; 1 Redf. on Wills, 182; Dayton on Sur., 45; Puchta's Pandekten, 652, § 481.) A will is not required to be under seal. (1 Jar. on Wills, 70; note Willard on Real Estate, 636.)

RAPALLO, J. The order made at Special Term, November 19, 1869, and afterwards affirmed at General Term, adjudg-

ing that the instrument then offered for probate was not the will of Federick Diez, was not a bar to the present proceeding, or conclusive upon the claim now made.

The instrument now propounded is not the same which was then rejected. That was an exemplified copy merely, and was rejected on the ground that the case was not brought within the statute, which allows exemplified copies of foreign wills to be admitted to probate. The present application is not made under that statute, but the document propounded for probate is the original will.

The execution of the instrument in the manner required by the laws of this State for the execution of wills of real and personal property seems to have been satisfactorily proved by the evidence taken on commission; assuming the instrument to be in form a will, no point has been made that any necessary formality was wanting in its execution as such.

The two objections relied upon in the appellant's points are, first, that not being under seal, the instrument cannot be regarded as a will of real estate, and second, that it is in form a contract and not a will.

The first objection is wholly unfounded; a seal is not requisite to a will of real or personal estate. The statute requires only that it be subscribed by the testator at the end. (2 R. S., 63; § 40; 1 Jarman on Wills, 70, note.)

The second objection presents a more debatable question. The instrument is entitled, and refers to itself, in one place, as a matrimonial and testamentary agreement, and in another as a contract, and contains no expression declaratory of its testamentary character, except the words testamentary agreement, or, as translated in the first deposition, "contract of marriage and inheritance" and in the third, "marriage and inheritance contract." These designations are not, however, conclusive as to the character of the instrument. That must be determined by the dispositions which it makes. (1 Jarman on Wills, p. 13; *Ex parte* Day, 1 Bradf., 482, and authorities there cited.)

These dispositions are, in substance, that Diez and his wife each declare that they thereby determine that, upon the decease of one or the other of them, the surviving husband or wife shall receive, unconditionally, the entire property of the one having died first, and that all former dispositions concerning the hereditary succession, which may have been made by either of the parties singly, or with the consent of both, are annulled.

These provisions are preceded by a declaration of the motives leading to such a disposition of the property, which were, that it had been acquired by the joint exertions of the parties and that their only offspring had in the tenderest age departed this life.

It is claimed that the fact that the property, upon which the instrument was to operate, was the product of the joint labor of the parties, furnished a consideration for an agreement between them, that on the death of either it should belong to the survivor, and that the instrument in question was such an agreement and not a will.

The distinguishing feature of a will is, that it is not to take effect except upon the death of the testator. An instrument which is to operate in the lifetime of the donor, and to pass an interest in the property before his death, even though its absolute enjoyment by the donee be postponed till after the death of the donor, or even though it be contingent upon the survivorship of the donee, is a deed or contract, and not a will. But if the instrument is not to have any operation until after death, then it is a will, notwithstanding that it may have been executed in pursuance of a previous promise or obligation appearing upon its face.

Testing the document now before us by this rule, we think that it was the will of that one of the signers who should first die. That it did not purport to convey any present estate or interest in the property, or to deprive either of the parties of the absolute power of disposition of his or her own property during his or her life, but was an arrangement testamentary in its character, and not intended to operate except upon the

death of one of the parties, and then only as expressive of the intention of the one dying as to the posthumous destination of his or her property. It does not use words of grant or mutual contract, but states that the parties have determined that, upon the death of either, the survivor shall receive the entire property. The reasons given for this determination do not necessarily make it a contract.

The fact that by the same instrument the husband and wife devised reciprocally to each other, or, in other words, that it was a mutual will, does not deprive it of validity. There is no just objection to such a form of testating. The instrument operates as the separate will of whoever dies first. Here, the husband having died first, it can be proved as his will, and the efficacy of his dispositions is in no way impaired by those portions of the instrument which if the wife had died first would have constituted her will, but which have now become inoperative. The result is precisely the same as if like reciprocal dispositions had been made by the husband and wife by means of two separate instruments. The combining of such reciprocal dispositions in one instrument is sanctioned by several authorities. (*Ex parte Day*, 1 Bradford, 476; *Lewis* v. *Scofield*, 26 Conn., 452; *Evans* v. *Smith*, 28 Geo., 98; 1 Redfield on Wills, 182; *Rogers, appellants*, 2 Fairfd. [11 Me.], 303; *In re Stracey*, 1 Deane, Eccl. R., 6; *In re Lovegrove*, 2 Swabey & Tristram, 453; *Dufour* v. *Pereira*, 1 Dickens, 419; 2 Hargrave, 310, 311.)

The order should be affirmed with costs.

All concur.

Order affirmed.