## VALIDITY OF A DECLARATION OF TRUST.

### Superior Court of Cincinnati.

### JOHN F. ROBINSON v. HARRY G. LAMKIN ET AL.·

### Decided November, 1920.

*Agreement Between Father and Daughter Affecting the Ownership of Securities—Scope of the Trust Created—Not Executory in Character—Bearing of Previous Adjudication—Adequacy of Consideration—Trust Held Not Testamentary in Character—Marital Rights of Husband—Subsequent Will of Daughter Not Effective Against Provisions of Trust.*

1. Where the validity of an instrument, executed by father and daughter, has been upheld against attack on the ground that the daughter was under the complete dominion of the father and did not understant the nature of the instrument she was signing, the doctrine of *res adjudicata* is applicable as to the question of undue influence, and a recital in the decree that the court found it unnecessary to pass upon one of the seven items of the instrument containing a contingency based on survivorship, does not open the door to a second attack on the same ground as the first action but restricted to that particular item.

2. An agreement between father and daughter with reference to stocks acquired by the father but standing in the daughter's name, whereby the father took a life estate with provision for becoming the absolute owner, in the event of the prior death of the daughter without issue, while she was to become the absolute owner for herself and her children in case she outlived her father, is not open to attack on the ground that it is an executory trust.

3. Inadequacy or want of consideration for the establishing of a trust is immaterial, where the trust is voluntary and executed.

4. The contention that the item in controversy establishing a trust is a will, and therefore revocable and invalid. is without force in view of the previous adjudication establishing the irrevocability of the entire instrument, and also by reason of the further fact that while enjoyment by either party of full ownership of the securities covered by the item was postponed until the death of the other, the rights involved vested immediately upon execution of the instrument.

5. A husband acquires by marriage no interest in the separate personal property of his wife, and if by written instrument she provides that the income from stocks acquired by her father but standing in her

name shall go to him for life and full ownership pass to him in case of her prior death without issue which subsequently occurred, her husband, who added nothing to the property either by way of investment or management is without ground for complaint of invasion of his marital rights, and as between the husband and the father equity is with the latter.

6. Item 4 of the agreement under consideration is a complete, executed and valid declaration of a trust contained in an instrument heretofore adjudicated valid as a whole and the provision in favor of the father is enforcible as against a subsequent bequest of the same stock to the husband.

*Stephens, Lincoln & Stephens* for the plaintiff.
*Healy & Ferris* for Harry C. Lamkin.
*Miller Outcalt,* for the Printing and Lithographing Co. and the Playing Card Co.
*E. H. & W. B. Turner* for W. B. Oglesby Paper Co.

Marx, J.

This suit is brought by John F. Robinson as plaintiff to secure the unconditional ownership of certain valuable shares of stock under Item 4 of a written instrument executed by his deceased daughter, Pearl R. Lamkin, March 3, 1905. The principal defendant is Harry G. Lamkin, the widower of Pearl R. Lamkin.

The stock which the plaintiff seeks to have transferred to him, and which is claimed by the defendant Harry G. Lamkin, as the executor of Pearl R. Lamkin, to be the property of her estate, subject to the admitted life interest of the plaintiff under said agreement, now stands upon the books of the defendant corporations in the name of Pearl R. Lamkin.

The shares of capital stock which the plaintiff seeks to have transferred to him in this case are 508 shares of United States Playing Card Company; 522.43 shares of the first preferred and 381.32 of the second preferred United States Printing & Lithographing Company; and 50 shares of the W. B. Oglesby Paper Company.

Each of these corporations has been made a defendant. However, since each of the defendant corporations have in effect filed answers asking the court to determine the ownership of the above

named shares of stock and assert no rights on their own account in said stock, the principal parties are John F. Robinson as plaintiff and Harry G. Lamkin as defendant. For convenience the term plaintiff and defendant will be used in this statement of fact and in the course of the opinion as referring to these two principal parties unless otherwise specified.

The issue as to the ownership of the above named shares of stock depends for decision upon the validity of Item 4 of the instrument of March 3, 1905. If Item 4 is valid, then the plaintiff is entitled to the relief prayed for in his petition. If Item 4 is invalid, for any of the reasons alleged by the defendant, then the prayer of the petition must be denied. The question as to the validity of Item 4 is purely a question of law and involves no disputed questions of fact. However, in order that the question of law may be more intelligently understood, a brief statement of the facts is essential.

## STATEMENT OF FACTS.

The shares of stock which the plaintiff seeks to have transferred to him in this case represent part of the proceeds of an investment made by the plaintiff in The Russell & Morgan partnership formed January 1, 1867. The plaintiff was one of the four partners in that firm which became a corporation in December, 1883. At that time he received 99 shares of the capital stock of the Russell Morgan Company, each share having a par value of $1,000. In 1884 the plaintiff transferred 95 shares of this stock to his wife, Caroline F. Robinson in order to protect his family in case anything should happen either to him or his circus. In 1889 Caroline F. Robinson died intestate, leaving as her sole heirs at law the plaintiff and four minor children, John, aged 17 years; Kate, aged 15 years; Pearl R., aged 11 years; and Caroline, aged 8 years. Her estate consisted of the 95 shares of Russell & Morgan stock. The plaintiff's brother, Gilbert N. Robinson, was appointed administrator of this estate. The plaintiff did not claim his distributive share of his wife's estate and on December 5, 1889 the estate of Caroline F. Robinson was settled by the trans-

fer of the 95 shares of stock of Russell & Morgan Company to the plaintiff as guardian of his four minor children. As each of the children became of age, the stock was transferred to them severally in proper proportions on the books of the company. In this manner the plaintiff's daughter Pearl, became the owner of 23¾ shares of the stock of the Russell & Morgan Company, which original stock by reason of the purchase of the Russell & Morgan Company by the United States Printing Company and different exchanges of that stock became the stock now standing in the name of Pearl R. Lamkin upon the books of the defendant corporations and involved in this case.

On October 2, 1901, the plaintiff's daughter, Caroline, married Horace Stevens, against her father's wishes. On June 13th, 1903, Caroline Stevens executed a written instrument with respect to her share of the original Russell & Morgan stock similar to the instrument subsequently executed by her sister Pearl R. Lamkin, on March 3, 1905, which is under consideration in this case.

On March 1, 1905, the plaintiff's daughter, Pearl R. married Harry G. Lamkin against her father's wishes, and on March 3, 1905, executed the written instrument of that date concerning her share of the original Russell & Morgan stock which is the subject of this controversy.

In 1908 the plaintiff married a second time against the wishes of his children. Shortly thereafter, Caroline, Pearl R., and John broughts suits to set aside and cancel the instruments of June 13, 1903, and March 3, 1905 and for an accounting. The suit brought by John was settled out of court. The suits brought by Caroline and Pearl proceeded to final judgment by which the validity of both instruments was finally established with the exception of Item 4. The validity of Item 4 of the written instruments of June 13, 1903, and March 3, 1905, was not determined because Item 4 provided for the contingency of Caroline or Pearl dying before the plaintiff and without issue, which contingency had not happened when the previous cases were decided, and did not then seem likely to happen. That contingency has now happened

in the case of Pearl R. Lamkin who died in October, 1918, without issue.
issue.

For a more complete report of the facts and history of the previous cases reference is made to the opinion of Judge Chas. J. Hunt in *Pearl R. Lamkin* v. *John F. Robinson* and *Caroline Stevens* v. *John F. Robinson,* 10 Ohio Nisi Prius (N. S.), 1.; and to the opinion of the Circuit Court reversing the Common Pleas Court in *Pearl R. Lamkin* v. *John F. Robinson* and *Caroline Stevens* v. *John F. Robinson,* 15 Ohio Circuit Court (N. S.), 126, affirmed in *Lamkin* v. *Robinson* and *Stevens* v. *Robinson,* 88 Ohio State, 603.

For the record and arguments in these cases reference is made to the printed Ohio Supreme Court Records and Briefs, 88 O. S., part 36, Cases No. 13759 and 13760. Since the important questions of law which must be decided in this case turn exclusively upon the construction and validity of Item 4 of the instrument of March 3, 1905. that instrument is quoted verbatim, as follows:

"Whereas, I am the owner of certain stocks, to-wit: five hun. dred and eight (508) shares of the capital stock of the United States Playing Card Comptny evidenced by Certificate No. ——.

"Eight hundred and three and three-fourths (803¾) shares of the capital stock of The United States Printing Company, evidenced by Certificate No. —— and fifty (50) shares of the W. B. Oglesby Paper Company, evidenced by Certificate No. ——, now this agreement is to show:

"That for and in consideration of one dollar and other good and valuable considerations, to me paid, the receipt whereof is hereby acknowledged:

"1. The said John F. Robinson is to have and retain possession of said shares of stock for and during the term of his natural life; and to collect the dividends thereon and apply them to his own use, and he shall never be called upon to account for them to me or my executors or administrators.

"2. He is to vote the said stock at any and all elections of the said companies, respectively: and for this purpose I hereby authorize him, the said John F. Robinson as my true and lawful attorney, with power of substitution and revocation, for me and in my name to vote at any and all meetings or meetings of stock-

holders of said companies with all the powers I should have if personally present.

"3. That with my consent and approval, when in his judgment it is advisable to do so, to sell the said stock and reinvest the proceeds of sale.

"4. In the event of my dying before he does, leaving no issue of my body, then the said trust shall lapse and the said stock is to revert to him; and to carry out this condition I hereby authorize and empower the said United States Playing Card Company and the United States Printing Company and The W. B. Oglesby Paper Company, and the respective officers of each, to transfer the said shares of stock so transferred to me to the said John F. Robinson at his request.

"5. Should I die before my father, leaving issue, his rights hereunder shall continue and at his death the said stock is to become the property of my children or their descendants.

"6. Should my father die before I do, then the said stock is to come into my possession again and become fully my property.

"7. This agreement is to be in effect during the life of my said father—subject, of course, to our right to change the terms at any time we may agree to do so.

"8. In testimony whereof, I have hereunto set my hand in quintriplicate—one copy for myself, one for John F. Robinson, and for each of the said companies, this third day of March, A. D., 1905.

"(Signed) Pearl R. Lamkin.

(Signed)
"Witnesses:
"R. C. Bolt,
"John G. Robinson."

The plaintiff has always had the physical possession of the certificates of stock referred to in the instrument of March 3, 1905, and still has possession of such certificates. Prior to the execution of said instrument and ever since then, the plaintiff has collected all of the dividends upon said stock and has voted said stock upon all occasions. While the plaintiff has had the possession of the certificates of stock and has collected the dividends and voted said stock, the stock has always stood upon the books of the company in the name of Pearl R. Lamkin, since the settlement of her account in the probate court. Pearl R.

Lamkin having died without issue of her body prior to the plaintiff, the plaintiff now asks that the certificates of stock be transferred upon the books of the company into his name as provided in Item 4 of the instrument of March 3, 1905, and that his title be quieted as against all claims of Harry G. Lamkin.

Harry G. Lamkin for defense claims to have succeeded to the rights of his wife to said stock as her heir at law. Pearl R. Lamkin left a last will and testament, executed by her on February 1, 1909, which was duly admitted to probate by the probate court of Cook county, Ill., on January 15th, 1919, and Harry G. Lamkin was duly appointed and qualified as executor of said will and is now acting as such. Pearl R. Lamkin provided in said will that after the payment of her debts and the bequest of a diamond cross and ring to her sister, that all the rest, residue and remainder of her property go to Harry G. Lamkin, her husband absolutely and in fee, and annulled and revoked any and all wills previously made.

The defendant, Harry G. Lamkin further claims that Item 4 of the instrument of March 3, 1905, is wholly void because it is executory, without consideration and testamentary in character, and that upon the expiration of the life interest of the plaintiff, the defendant is entitled to the possession and unconditional ownership of the stock in question.

### STATEMENT OF LAW.

In the consideration of the instrument of March 3, 1905, we are met at the outset by the fact that this instrument has been the subject of a final judgment by the court of last resort of this state, which has passed upon the circumstances surrounding its execution and its construction with the single exception of the validity of Item 4. It therefore becomes essential to examine the scope and limitations of the judgment of the Circuit Court affirmed by the Supreme Court and reported in *Lamkin against Robinson et al;* and *Stevens against Robinson et al,* 88 O. S., 603.

1. *Scope of Prior Judgment With Respect to Instrument of March 3, 1905.*

In the suit brought by Pearl R. Lamkin on October 10th, 1908, she alleged that her signature to the instrument of March 3, 1905, had been obtained under circumstances which made that instrument invalid. The basis of her claim was that she was under the complete dominion and control of the plaintiff at the time her signature was obtained. She further alleged that the settlement of her account in the probate court and her receipts and signatures thereon had been similarly obtained. She set forth in full the instrument of March 3, 1905, and alleged that she did not know the meaning of that instrument at the time that she signed it. In her petition she prayed that the instrument be "set aside and cancelled" and that her father be compelled to deliver to her the certificates of stock in question and account to her for all of the dividends collected by him on account of said stock. The answer and cross-petition denied these allegations and prayed for an order adjudging the instrument of March 3, 1905, to be valid and binding and also adjudging that the plaintiff be entitled to the possession of the stock and dividends in question during his life and "absolutely" if his daughter died before him leaving no issue of her body.

Voluminous evidence was introduced upon these issues and the court of common pleas held that Pearl R. Lamkin was "the legal and equitable owner and entitled to the possession of the stock in question." The court of common pleas also found, in the language of the judgment entry, that the instrument of March 3, 1905, *"was executed by the plaintiff (Pearl R. Lamkin) without any consideration whatever therefore,"* and that said written instrument dated March 3, 1905, thereupon became invalid both in law and equity. The entry of the court of common pleas concluded in part with these words; "Wherefore it is ordered, adjudged and decreed that the paper writing set forth in the amended petition and dated March 3, 1905, be and the same is hereby set aside and held for naught; that the plaintiff

recover possession of the stocks aforesaid together with the certificates representing same. * * * (Record 17). The case was then taken up on appeal to the circuit court, which *reversed* the judgment of the common pleas court and entered a judgment, which in so far as material, is quoted verbatim as follows:

"The court finds that the defendant is entitled for the term of his life to the dividends upon the stocks in controversy in this case and set forth in the petition herein, together with the other rights given him by the instrument in writing of March 3, 1905, set forth in the petition, *which instrument the court finds to be valid and subsisting except the right of survivorship provided in Item 4 thereof, which the court finds it unnecessary to pass upon and does not do so;* * * * (Record 61-62). *Wherefore it is considered, adjudged and decreed that the defendant have and he is hereby awarded the right to draw the dividends on said stock during his life and the other rights specified in said instrument of March 3, 1905, except the right of survivorship, which is not decided as aforesaid.* * * * *And that subject to the provisions of said instrument of March 3, 1905, the plaintiff (Pearl R. Lamkin) is the owner of said stocks.* * * * (Record 62).

This judgment without modification was affirmed by the Supreme Court of Ohio and hence is absolutely conclusive upon all issues litigated in that case and determined by that judgment. It is the *judgment* which was affirmed by the Supreme Court, and *not* the syllabus or opinion of the Circuit Court, expressing its reasons for entering the judgment. However, there is nothing in the syllabus or opinion of the circuit court as reported in *Lamkin v. Robinson,* 15 C. C. (N. S.), 126, which indicates that the court expressed any opinion by inference or otherwise concerning Item 4 which is expressly left open both by the judgment, the opinion, and the syllabus. The reason why the upper courts did not consider it necessary to express an opinion about Item 4 of the instrument is obvious. Item 4 provided for the contingency of the daughter dying before her aged father without issue. That contingency had not occurred

when the previous case was heard, and it did not seem likely that it ever would occur. Remote as the happening of such contingency then seemed, that very contingency has now occurred.

While the contentions with respect to the validity of Item 4 were not determined by the previous judgment, the contentions with respect to the invalidity of the entire document were determined, and determined adversely to the plaintiff in that case. It was claimed there, as it is here, that the signature of Pearl R. Lamkin was obtained while she was under the dominion and control of her father and under such circumstances as to make the instrument itself void or voidable. This court can not again consider that issue. We are bound by the prior judgment which found against such claim and specifically held the instrument to be *"valid and subsisting."* This court feels bound by that judgment and therefore has not considered any part of the testimony or argument with relation to the circumstances under which Pearl R. Lamkin's signature to the instrument of March 3, 1905, was obtained. This court holds that that issue is *res ad judicata,* and in conformity with the prior judgment holds that Pearl R. Lamkin signed a valid agreement under lawful circumstances, and that this agreement must be enforced unless any of its terms are invalid. This court further holds that each of the provisions of that agreement has previously been determined to be valid with the single exception of Item 4, and that this item alone is open to attack upon grounds which if sustained would not also destroy the entire instrument. In other words, any allegation which if sustained, would defeat not only Item 4 but the other six items as well, must be considered prejudged because these items have been held valid, and valuable property rights have been and are being exercised under that instrument and that judgment. The court now proceeds to consider Item 4 and such other claims as are made with respect to its invalidity as do not also involve the remainder of the instrument.

2. *Trust Character of Item* 4. It is claimed by the plaintiff

that the instrument of March 3, 1905, in effect establishes a trust, and that Item 4 is one of the conditions of that trust. In order to properly determine the true character of Item 4, it is necessary to construe the instrument as a whole. The instrument as a whole, provides:

First, that John F. Robinson keep the certificates of stock, collect the dividends and vote the stock during his life just as he had always done prior to March 3, 1905, and as he has done ever since. And,

Second, that upon the death of Pearl R. Lamkin without issue prior to the death of John F. Robinson, he should become the unconditional owner of the stock, but upon her death with issue her children should become the unconditional owners of the stock upon the death of their grand-father John F. Robinson. And,

Third, that upon the death of John F. Robinson prior to the death of his daughter, Pearl R. Lamkin, she should come at once into the complete ownership and possession of the stock.

The instrument also gave the necessary powers of attorney and authority to the corporations concerned to carry out its provisions. It is very clear that this instrument conferred upon John F. Robinson definite and present rights for the remainder of his life, namely the right first, to keep the physical possession of the certificates of stock; second, to collect the dividends thereon and apply them to his own exclusive use without any accounting either to Pearl R. Lamkin or to her executors or administrators; third, to vote the stock at all elections of the respective companies, and, fourth, to act as attorney for Pearl R. Lamkin with power of substitution and revocation at all stockholders meetings. It is equally clear that the above rights not only vested upon the execution of the instrument of March 3, 1905, but continued under that instrument beyond the lifetime of the maker. It is conceded in this case that acting under the instrument of March 3, 1905, John F Robinson has ever since the death of Pearl R. Lamkin in October, 1918, been exercising his right to hold the certificates of stock, to collect the

dividends, and to vote at elections and other stockholders meet-. ings without any objection upon the part of the executors or. heirs of Pearl R. Lamkin. This right to continue to act under. the specific authority and direction of the instrument of March 3, 1905, after the death of Pearl R. Lamkin has been expressly adjudicated to be a valid and subsisting right and this adjudication sufficiently disposes of the contention made by the defendant in this case that the instrument under consideration is. merely executory.

The difference between an executory and an executed trust is clearly set forth in *Estate of Thomas Smith, Deceased;* 144 Penn. State Reports, 428; in which the court explains in the second syllabus:

"An executory trust, so called, is one in which the limitations are imperfectly declared and the donors intention is expressed in such general terms that something not sufficiently declared is required to be done in order to complete and perfect the trust and to give it effect. When the limitations are fully and perfectly declared, the trust is regarded as executed."

This clear statement of the law is supported and supplemented in *Neaves* v. *Scott*, 9 Howard, 196 at page 211 and *Perry on Trusts*, Vol. 1, Section 359. There is no question concerning the completeness of the instrument under consideration. It is definite, precise and complete, not only in the specific directions as to the disposition of the stock in the event; (1) of the father dying before the daughter, (2) of the daughter dying before the father without issue, and (3) of the daughter dying before the father with issue; but it is also complete in giving all of the necessary powers of attorney and requisite authority to the corporations concerned to enable these directions to be carried out. Whatever the rights of the father and daughter were with respect to the stock in question prior to the execution of the instrument of March 3, 1905, such rights upon both sides were definitely and finally determined, settled and concluded by that instrument. The father took certain specific rights in lieu of whatever rights he may have claimed, and forever con-

cluded any claim upon his part to any greater or additional right in this stock. Specifically stated, he took a life estate with the possibility of acquiring the unconditional ownership of the stock in the one event of his daughter dying before him without issue. On the other hand, his daughter secured to herself the absolute right to the unconditional ownership of this stock upon her father's death before her, *and accrued for her children* the absolute right to the unconditional ownership of this stock should she possess children upon her death prior to that of her father. There was nothing executory about this. It was completely executed. Not one single thing remained to be done in the future and nothing remains to be done now, except to carry out the directions of Item 4 and transfer the stock into the name of John F. Robinson upon the books of the companies unless Item 4 be invalid.

In the opinion of the court, this complete and executed final settlement fixed the rights of John F. Robinson, Pearl R. Lamkin or her *children,* had she died leaving issue, and her husband, as effectively as if the stock had on March 3, 1905, been transferred into the name of a neutral trustee with directions to hold same in trust and to pay the dividends during life to John F. Robinson with remainder to him upon the death of Pearl R. Lamkin prior to her father without issue, but upon the death of John F. Robinson before his daughter to pay the remainder to her, or upon her death with issue prior to the death of her father to pay the remainder to her *children.* No reason is suggested why the conveyance of this stock to a neutral trustee upon the terms of the instrument of March 3, 1905, would have been invalid. Trusts of this character are created and executed daily. There is no difference in law between the validity of a trust created through the instrumentality of a neutral trustee and a trust created by the settlor simply declaring himself to be the trustee and to hold the trust property upon certain terms and conditions as an irrevocable trust. This has been the law since *Ex parte Pye,* 18 Vesey, 140, decided by Lord Elden in 1811, in which Lord Eldon said:

"It is clear that this court will not assist a volunteer; yet, if the act is completed, though voluntary, the court will act upon it. It has been decided that, upon an agreement to trans- fer stock, this court will not interpose; but if the party had declared himself to be the trustee of that stock, it becomes the property of the *cestui que trust* without more; and the court will act upon it."

That doctrine has been followed in a long line of cases in- cluding, *Kekewich* v. *Manning,* 1 De Gex, M. & G., 176; *Jones* v. *Lock,* L. R., 1 Ch., 25; *Richards* v. *Delbridge,* L. R., 18 Eq., 11; *Estate of Thomas Smith,* 144 Penn., 428; *Krankel* v. *Krankel,* 104 Kentucky, 745; *O'Neil* v. *Greenwood,* 106 Mich., 572; *Locke* v. *Farmers Loan & Trust Co.,* 140 N. Y., 135; *Martin* v. *Funk,* 75 N. Y., 134; *In Matter of Totten,* 179 N. Y., 112; *Gerrish* v. *New Bedford Ins't for Savings,* 128 Mass., 159.

The principle of the owner declaring himself the trustee is recognized in *Flanders* v. *Blandy,* 45 O. S., 108, at the bottom of *page* 116, and also in the syllabus of *Worthington* v. *Redkey,* 86 O. S., 128.

The fact that Pearl R. Lamkin understood that she was creat- ing a trust is evident from the very fact that in Item 4 she refers to the status of the property under the entire instrument as *"said trust."* Courts have frequently said that even where the parties do not use the technical words of trustee and trust, that if the purpose and effect of the acts and words of the parties is to create a trust, it will be so declared. In this case it is not necessary to resort to such interpretation or construc- tion, for the creator of the trust has herself called it a trust. In a strict legal sense she could call it nothing else. She held the bare legal title. She separated from the legal title the beneficial interest and declared that she held the legal title for the benefit and use of her father for his life with remainder, to her or her children or to him in accordance with the specific language of the instrument. She did more than simply make this declaration. She served a copy of the declaration of trust upon each of the corporations and her action was irrevocable

*except with the consent of her father.* It would have been un-
necessary to state in the document that it could be changed in
its terms with the joint consent of both Pearl R. Lamkin and
her father, except perhaps certain rights would have vested in
any children of Pearl R. Lamkin and the companies without
such specific provision would not have consented to any change
in the instrument of March 3, 1905, affecting the rights of the
children. This provision serves to emphasize the irrevocability
of the act of Mrs. Lamkin and specifically makes it unchange-
able except with the consent of her father. A further fact
which brings into relief the complete surrender of the domin-
ion and control of the property by Mrs. Lamkin is that her
father held the physical possession of the certificates of stock
and *he likewise* was powerless to sell or reinvest such stock
without *her consent.* Thus in three distinct ways was Pearl R.
Lamkin barred from future dominion or control over the shares
of stock in question when she placed her signature to the instru-
ment of March 3, 1905: (1) by her own declaration, (2) by the
surrender of the physical possession of the certificates of stock,
and (3) by the service of notice of the trust upon the corpora-
tions concerned thereby embracing the property itself with the
trust character imposed upon the evidences of title.

The language of the Supreme Court of N. Y. in *Locke* v.
*Farmer's Loan and Trust Co.,* 140 N. Y., 135, perfectly sums
up the situation in the case at bar. The court said:

"In like manner, as between settlor and beneficiary a trans-
fer to the latter of all income and dividends necessarily trans-
fers the whole beneficial interest and leaves the settlor a holder
of the naked legal title on the books of the company as trustee
for the beneficial owners. That is the situation in which, by
the deed of trust, the settlor put himself and intended to put
himself, and his concurrent acts clearly demonstrate that in-
tention."

3. *The Question of Consideration.* A great deal has been
said orally and upon brief with respect to the alleged want or
inadequacy of consideration. Under the view taken by the court
of the trust character of the instrument of March 3, 1905, the

question of consideration becomes immaterial. It is uniformly held by all of the authorities that a voluntary, but executed, declaration of trust requires no consideration. (See cases cited above). However, if the question of consideration were material, this court is inclined to the view that such consideration existed and that the circuit court necessarily so found in order to reach the judgment entered in the previous case. It is true that the question of consideration as to Item 4 was left open, but it is equally true that if any part of the instrument of March 3, 1905, was supported by sufficient consideration, that same consideration would sufficiently support Item 4. The consideration which supports the instrument as a whole in the opinion of this court was the complete and final settlement of the rights of plaintiff and his daughter and the limitation of their respective rights to the specific terms of the instrument of March 3, 1905.

4. *Testamentary Effect of Item 4.* It is strenuously insisted that Item 4 is invalid because it is in effect a will and as such was subject to revocation. If Item 4 was subject to revocation in the same manner as a will, there can be no question about the fact that it has been revoked by the last will and testament of Pearl R. Lamkin, admitted to probate in Cook county, Ill., leaving all the rest, residue and remainder of her property except a few diamonds to the defendant. The irrevocability of the entire instrument, including Item 4, has been previously discussed in this opinion and has previously been adjudicated except as to Item 4. It has already been determined by final judgment that Items 1, 2, 3, 5, 6 and 7 are irrevocable. It almost inevitably follows that Item 4 is likewise irrevocable. It is true that Item 4 provides what shall be done in case Pearl R. Lamkin dies without issue before her father, but Item 5 provides what shall be done in case Pearl R. Lamkin dies before her father leaving issue *and cuts out all rights of her husband in such event,* and Item 6 provides what shall be done in case Pearl R. Lamkin's father dies before her. Each of these items provides for the contingency of death. Not every provision as

to the disposition of property upon the death of the owner is a
will. The distinguishing feature of a will is that it does not
take effect except upon the death of the testator. *Up to the
moment of death no rights of any kind pass.* The instrument
is *wholly* without effect, and is subject to revocation at any-
time. In the instant case, while the *enjoyment* of the uncondi-
tional ownership of the property was *postponed* until death, the
*rights* were *vested* upon the execution of the instrument. This
rule is accurately stated in *Robb* v. *Washington & Jefferson
College*, 185 N. Y., 485, in which it is said,

"Doubtless the second trust created by the declaration was
not to take effect in possession or enjoyment until the death of
the founder,"

but this was by reason of the terms of the instrument itself, not
because that instrument was testamentary. The cases are so
numerous in support of this doctrine that only a few are cited,
and these without comment. *Matter of Diez*, 50 N. Y., 88;
*Gilman* v. *McArdle*, 99 N. Y., 451; *Lewis* v. *Curnutt*, 130 Iowa,
423; *Ewing* v. *Jones*, 130 Ind., 247; *Bromley* v. *Mitchell*, 155
Mass., 509; *Wissel* v. *Pierson*, 28 C. C., 452; *Nichols* v. *Emery*,
109 Cal., 323; *Cowley* v. *Twombly*, 173 Mass., 393, 53 N. W.,
886; *Abbott* v. *Holway*, 72 Me., 298; *Smith* v. *Baxter*, 62 N. J.,
Eq., 209, (aff'd. 64 N. J., Eq., 793); *Brown* v. *Maltocks*, 103
Pa. Sta., 16.

In this connection two Ohio cases must be noticed, the first
is the case of *Worthington* v. *Redky*, 86 O. S., 128. In this
case Worthington expected to die and for the specific purpose
of circumventing the statute making void a bequest by will to
charity within twelve months of death, attempted to make these
bequests through the form of a trust instrument. However,
Worthington specifically reserved the right to revoke the appoint-
ment of his trustee at any time during his life, and also deposited
the trust money in the name of the trustee but in trust for
Worthington. The Supreme Court held that there was no un-
conditional and irrevocable parting of dominion by Worthington

under the trust fund, but that instead, to quote from the bottom of page 138,

"he did not intend to let it get beyond the power of recall, and perhaps that he might have the increment of the money while he lived."

The Supreme Court therefore concluded that the so-called trustee was merely the agent of the donor and that the agency was revoked by death. This case is not an authority in support of the claim that Item 4 is testamentary in character. On the contrary, the Supreme Court in the Worthington case clearly states that where there is a clear and specific declaration of trust, and the settlor accompanies that declaration by completely and irrevocably relinquishing all dominion over the trust property, it will be sustained as a valid trust.

The most recent case is *Patrick* v. *Parrott*, 92 O. S., 184. The conclusion reached there is extremely persuasive if not conclusive of the case at bar. In that case Parrott made a will leaving his personal property to his wife, and drew deeds conveying his real estate to his children and grand-children. Each deed contained the provision that the same should not be recorded until his death. The will and deeds were given to the notary with directions that the deeds should be,

"safely kept and delivered at the decease of said John Parrott, to his heirs."

They were placed in the custody of the local bank cashier. Parrott also delivered to the notary the following written instrument:

"My request is, that at my decease the within deeds be given to the parties named."

Parrott died and the deeds were delivered and recorded. The court held from the facts stated:

"1. No control, dominion or power of revocation was reserved over the real estate by the donor.

"2. The cashier was the agent or trustee for the donees.

"3. There was a valid and legal delivery, on the part of the donor, of the deeds to the grantees therein named."

. 5. *Marital Rights of Husband.* There is no basis in the law of Ohio for the claim that the action of Pearl R. Lamkin in imposing a trust upon the stock in question under the terms of which her husband was deprived of any rights in the stock was a fraud upon his marital rights. Under Item 5, if Pearl had left children the stock would have gone to them and not one share to defendant. The previous judgment held Item 5 valid and that. it cut. off no legal rights.

Under the law of this state, neither husband or wife has any interest in the personal property of the other during the lifetime of either. Sec. 7998, General Code.

A husband or wife may also enter into an engagement or transaction with other persons which either might if unmarried. Sec. 7999, General Code. Also *Unner, Guardian* v. *Yaeger,* 15 Weekly Law Bulletin, 265; affirmed 27 Weekly Law Bulletin, 148. There is nothing in the facts to warrant any claim of fraud upon the rights of the husband. It is admitted that the stock involved in this case was originally the property of the plaintiff. It is likewise admitted that he placed it in his wife's name in order to protect his own family against personal or business disaster. In addition it is admitted that he has always managed and controlled the property interest represented by the stock. He personally has voted the stock, and determined any questions with relation to it which have come up before meetings of the stockholders. If his daughter felt that under these circumstances it was for the best interests of herself and her father to confirm the rights which he had always exercised by written instrument, and to make certain that the stock, which was his originally, should go to him upon her death before him without issue, her husband can hardly be heard to complain of any fraud upon his rights. The husband contributed nothing, either by way of original or subsequent investment, or by participation in the management or control of the

property represented by the stock. He acquired by marriage no interest in the separate personal property of his wife and in so far as the equitable considerations of the case are concerned, the court is of the opinion that as between the husband and the father, the equities are with the latter.

For these reasons the court is of the opinion that the instrument of March 3, 1905, is a complete, executed and valid declaration of trust, and that Item 4 is a valid Item of a previously adjudged valid instrument. The language of the instrument is so clear and precise that there is no ambiguity or indefiniteness concerning its interpretation. The court therefore finds the issues and the equities of the case in favor of the planitiff, and a decree may be entered in accordance with this opinion, awarding to the plaintiff the relief prayed for in his petition against each of the several defendants.

The court has given to this case the utmost consideration, not only because of the large financial interest involved, but because of the importance of the principles of law presented for determination. Acknowledgment is made here of the indebtedness of the court to counsel upon both sides for their industry, learning and ability displayed in the conduct of the case and in the oral and written argument. The painstaking examination of authorities and the sincere effort to aid the court throughout the hearing and discussion of the case, and the distinguished advocacy of the causes of their respective clients by Mr. Chas. H. Stephens, Jr., and Mr. John C. Healy is worthy of the highest traditions of our Bar and is commented upon specially in order that the same may serve as an example and inspiration.